### Harris *vs.* Clark and others, executors, &c.

Requisites of a valid gift *mortis causa.*

Distinction between a *donatio mortis causa* and a gift *inter vivos.*

What is a sufficient delivery to render a donation valid as a gift, *mortis causa.*

Promissory notes and bills of exchange, whether payable to order or not, and whether endorsed or not, bonds and mortgages, and all instruments in writing, by which any debt against a third person is secured, may be the subjects of a *donatio mortis causa.*

But the executory promise of the donor himself, as his own draft upon a third party, in favor of the donee, cannot be made the subject of a *donatio mortis causa.*

And a promise will not be implied on the part of the drawer, in such a case, that the draft shall be accepted and paid by the drawee, so as to afford a foundation for an action, in favor of the donee, against the executors of the drawer, in case of non-payment, as for a breach of promise by the testator.

Such an instrument does not constitute an obligation against the donor himself, which can be enforced against his executors after his death.

Where a draft upon a third person is presented to another as a voluntary gift from the drawer, no implication arises of a guaranty on the part of the drawer that the draft shall be honored by the drawee.

Whether the draft of the donor upon a third person, who has funds of the drawer in his hands, is not in equity a valid appropriation of such funds to the payment of the draft, as a gift *mortis causa? Quære.*

The case of *Wright* v. *Wright,* (1 *Cowen's Rep.* 598,) overruled.

This was an action of assumpsit, brought against the defendants as the executors of Sidney Smith, deceased, upon promises by the testator, founded upon the implied obligation of the deceased, that a draft for $30,000, which he sent to his

Harris v. Clark.

sister, Mrs. Harris, to be enjoyed by her as a gift, in the event of his death, before he should reach her residence, should be accepted and paid by the drawees. After the death of the deceased the draft was endorsed to the plaintiff, demanded of the drawees, and acceptance refused. The draft and endorsement are in the words and figures following :

" Messrs R. Clark & Co.

Please to pay Nancy Harris, or order, thirty thousand dollars, and place the same to my account.

New York, 9th July, 1844.        SIDNEY SMITH.

(Endorsed,)    Pay to the order of Levi Harris.

Norwich, Jan. 16, 1846.        NANCY HARRIS."

The cause was tried before the Hon. P. GRIDLEY, circuit judge of the fifth circuit, in the county of Otsego, on the 16th of April, 1846. It was proved upon the trial, that the draft was sent to Mrs. Harris, by the testator, attached to a letter of the same date, written by him while in very feeble health. In that letter the testator mentioned his intention to visit Mrs. Harris in a few days ; declared that he did not like his will, and should alter it as soon as he reached her residence, and added, " and for fear I should not reach home, as I am very feeble, I will give you an order on R. Clark & Co. for thirty thousand dollars, which they will pay you if I should be taken away, as I have funds in their hands to a large amount ; and I hope you will make good use of the money." The testator died during the same month in which the draft was dated. A motion for a nonsuit having been denied by the circuit judge, the cause was submitted to the jury, who found a verdict for the plaintiff for the amount of the draft, with interest. Upon which a case was made, with liberty to the court to enter a nonsuit, and with leave to either party to turn the same into a bill of exceptions.

*J. A. Spencer & N. Hill Jr.,* for the plaintiff.

*C. O'Conor & C. P. Kirkland,* for the defendants.

Harris *v.* Clark.

*By the Court,* GRIDLEY, J. The most important ques-
tion presented for our consideration in this case is, whether this
draft is a valid claim against the executors of the drawer as a
*donatio mortis causa.* To render a gift of this description
valid, several requisites are indispensable. (1.) It must be made
with a view to the donor's death. (2.) It must be conditioned
to take effect only on the death of the donor, of his existing
disease, or during his existing illness. (3.) There must also
be a delivery of the subject of the donation. There are some
striking distinctions between a *donatio mortis causa* and a
gift *inter vivos.* The former is ambulatory, incomplete, and
revocable during the life of the donor ; it is liable to the debts
of the donor, upon a deficiency of assets ; and it may be made
to the donor's wife. (1 *Story's Eq. Jur.* 665, §§ 606 *a,* 607 *a.*
1 *Will. on Ex.* 544, 552.)

It is apparent that all the requisites to constitute a valid
*donatio mortis causa* exist and are proved in this cause. The
letter of the deceased clearly shows that it was his intention
that this draft should be collected, and the proceeds of it in-
vested as a provision for the donee, in the event of his death
before he should reach her residence. It is equally certain
that he intended it to be used only in the event of his death
from his then existing disease. He was in feeble health, and
was suffering under a protracted pulmonary complaint, from
which a residence in Italy, whence he had just returned, had
brought him no relief. When he wrote the letter in question
he had just arrived in the city of New-York, and was prepar-
ing to visit his sister, the donee, at her house, in the county
of Chenango, where he intended to alter his will so as to
make its provisions more favorable to her. And it was for
fear (as he declares in the letter,) " *that he should not live to
reach home*" that he sent her the munificent gift which has
become the subject of the present litigation. The draft ac-
companied the letter, and was received by the donee ; render-
ing the delivery absolute and perfect, so far as such an instru-
ment is capable of delivery. It is precisely such a delivery as
has been held sufficient in the case of a bond, or the promissory

---

Harris *v.* Clark.

---

note of a third person. So far as a draft can be made available as a security, or as a written evidence of debt against a third person, no reason can be assigned why it should not be held to be capable of delivery, and valid as a *donatio mortis causa*. (*See Duffield* v. *Hicks*, 1 *Bligh. N. S.* 497. *S. C.* 1 *Dow's Rep. N. S.* 1. 1 *Paige*, 316.) It is also fairly to be implied by what is said in *Tate* v. *Hilbert*, (2 *Ves.* 111,) that if the donee had received the amount of the draft in the donor's lifetime, or had parted with it for a valuable consideration, it would have been held to be a valid gift. This would, however, seem to be an unauthorized use of the instrument, and utterly incompatible with the inchoate and revocable character of the gift, prior to the death of the donor; especially as the act of delivery does not vest any absolute right in the donee, but merely constitutes the evidence which the law has declared indispensable, of the *fact*, or in other words, of the existence of the donation itself.

It is obvious from what has already been said, that the difficulty in this case does not arise from the want of an actual delivery of the instrument which was the subject of the donation; nor from the nature of the draft, so far as it represents a debt, or demand, against a third person. It arises from the character of the instrument as representing and constituting an obligation against the donor himself; conditional indeed during his life, and therefore not to be enforced against him; but becoming absolute at his death, and therefore a legal claim against his executors. The proposition to be maintained by the plaintiff is, that the gift of this draft embraced, not only such claim against the drawees as the donee might be able to enforce against them, but also a promise of the donor that the drawers should accept and pay. This action is brought for the breach of this very promise, against the executors of the donor. It therefore stands upon the same principle, in this respect, with the voluntary gift of the donor's own promissory note. And the question is, whether the executory promise of the donor, made without consideration, can be made the subject of a gift *mortis causa*. Such a gift *inter*

*vivos* has been held void for the want of a legal consideration to support the promise, in several adjudged cases in this court. (*See* 18 *John. Rep.* 148. 7 *Id.* 28.)

We do not think that it would be useful to go into a particular examination of the numerous and conflicting cases that have been decided in England and this country, in relation to this species of gift. It is impossible to reconcile the decisions in many of the earlier cases with those of a more recent date, upon any consistent or intelligible principle. Learned judges have exhausted their ingenuity in discussions upon the kind of delivery which the law requires in this class of cases; whether the delivery should be *actual*, or merely *potential*, or *symbolical ;* what was necessary to constitute the delivery *actual*, as distinguished from the *symbolical ;* and as to the question what species of property was susceptible of such a delivery as the law had pronounced indispensable to constitute it a proper subject of a *donatio mortis causa.* It is true, however, that a far more liberal rule obtains at the present day than existed at any former period ; and many gifts have been held to be legal and valid, which would once have been declared void, under the application of the more artificial doctrines which then prevailed. It is now settled by adjudged cases that promissory notes, and bills of exchange, whether payable to order or not, and whether endorsed or not, bonds and mortgages, and all instruments in writing by which any debt against a third person is secured, may be the subjects of a *donatio causa mortis.* (*See* 1 *Paige,* 316. 1 *Dow. N. S.* 1. 1 *Bligh, N. S.* 497, 530, 534, 535, 536, 541, 542. 3 *Mad.* 184. 24 *Pick,* 261.) In the case of *Duffield* v. *Elwes,* (1 *Bligh, N. S.* 497,) Lord Eldon, in a very elaborate judgment, in which he reviewed all the previous cases, came to the conclusion that a mortgage deed was the subject of transfer by mere delivery, as a *donatio mortis causa ;* reversing the decree of the master of the rolls, who had held the contrary doctrine. The principle established in this case is, that in the case of the gift of a bond, or mortgage, there is a trust raised which a court of equity will enforce, by compelling the executors to allow the

Harris v. Clark.

use of their names in any legal proceeding necessary to enforce the security against the debtor, for the purpose of carrying into effect the intention of the donor.   In this respect there is a manifest distinction between a gift *inter vivos* and a *donatio mortis causa*.   In the former case a court of equity will not compel a donor to complete his gift, nor an executor to complete the gift of his testator; whereas, as we have seen, in the latter case, the donor may successfully invoke the aid of the court of chancery for that purpose.

We are now called upon to go one step farther, and to hold that the executors are bound, not only to permit the use of their names to enforce the collection of the demand against the debtor, but to pay the demand if the debtor does not; not merely to complete the gift of the donor, but to make that gift available out of his estate.   Although the application of this principle to the draft under consideration might not disappoint the general intention of the donor, to convert the proceeds of it into a provision for his sister, yet it is quite obvious that if the drawees had been insolvent, and had failed to accept and pay the draft for that cause, the collection of the sum out of the residue of his estate, would be a consequence never foreseen or intended by the deceased.   This action, however, is not sought to be maintained upon any such distinction existing in favor of the plaintiff in this particular case.   On the contrary, it is manifest that if the suit can be sustained at all, it must be upon the general principle of a breach of contract, applicable to all cases wherein there is a failure to *accept* and *pay*, irrespective of the cause which may have produced a refusal on the part of the drawee of the bill.   In this respect, therefore, the case at bar stands upon grounds less favorable to the donee than the gift of the donor's own promissory note.   By such a gift it may be argued, that the donor makes an absolute disposition of the amount of the note, to be paid out of his estate generally; whereas, in the former case, he intends merely to devote a particular fund, and if that fund fail, nothing beyond it.   In the one case the gift may be said to enhance the obligation imposed by an express promise, while the donor actually

Harris *v.* Clark.

intended to give ; in the other, the duty is founded on an implied one, which he never meant to assume. We propose, however, to consider the question without regard to this distinction.

The question to be determined is, as we have seen, whether the donor's executory promise, without a consideration to support it, can be made the subject of a *donatio causa mortis.* We are not aware that any English or American authority, prior to the case of *Wright* v. *Wright,* (1 *Cowen's Rep.* 598,) ever held such a gift valid. The case of *Lawson* v. *Lawson,* (1 *Peere Williams,* 441,) has been cited by counsel in support of this principle. And Lord Hardwicke, in a subsequent case, seemed to regard it as having been decided upon the doctrine of gifts *causa mortis.* The court in that case, however, did not place its decision upon any such ground. The master of the rolls did, indeed, hold, the gift of the donor's £100 check, for the purpose of buying mourning, &c. to be good, by way of *appointment* and *direction* to his executors, but not as a *donatio mortis causa.* On the contrary, there is a series of English and American adjudications directly opposed to the principle of the decision in *Wright* v. *Wright.* We will only refer to the following : *Tate* v. *Hilbert,* (2 *Vesey,* 112.) *Holliday* v. *Atkinson,* (5 *Barn. & Cress.* 501.) *Bunn* v. *Markham,* (7 *Taunton,* 224.) *Ward* v. *Trim,* (2 *Vesey,* 431.) *Snellgrove* v. *Bailey,* (3 *Atkyns,* 214.) *Parish* v. *Stone,* (14 *Pick.* 199.) *Raymond* v. *Sellick,* (10 *Conn. Rep.* 485.) 6 *N. Hamp. Rep.* 386, 2 *Gill & John.* 217. *Holly* v. *Adams,* (16 *Vermont Rep.* 206.) It is doubtless a fair objection to the authority of some of these cases, that the decisions in them are placed upon grounds which have been disapproved, and are no longer tenable ; while others have met the very point, and decided it upon principles which have not been drawn in question, and that are equally applicable to the case at bar. Of this class is the case of *Parish* v. *Stone,* (14 *Pick.* 199,) in which one of the points was, that the donor's own promissory note, payable to the donee, cannot be the subject of a *donatio causa mortis.* In the course of a very able opinion, pronounced by Chief Justice Shaw, the court hold this language :  " But we think the

Harris *v.* Clark.

donor's own promissory note, payable to the donee, could not be the subject of such a donation. It was not an existing available promissory note to any one. It was not a chose in action. We have already seen that it was not a binding contract by the promisor to the promisee." To this reasoning we fully subscribe. The thing given was not a chose in action, nor property of any kind. It was merely a void promise, incapable of being the subject of a donation. We do not rely upon the argument that there was no actual delivery of the *thing*, that is, of the *money ;* for the delivery of a note or bond representing a money demand against a third person would have been good. But the difficulty which seems to us insurmountable is, not only that there was no delivery of the money, but that there was no delivery of any instrument representing the money. The gift was merely of a *void promise*, which, though subsisting in the form of a written security, was as valueless as waste paper, and therefore incapable of being made the subject of a delivery or donation. So it may be said of the draft under consideration. So far as it represents a valid claim against a third person, we can see no force in the objection that it was not delivered. But inasmuch as it is sought to be enforced against the executors of the donor, as representing and creating a legal obligation upon him, and available against them, as the representatives of his estate, it appears to us to be open to the objections: 1st. That being without consideration, it was a void promise, incapable of being made the subject of a delivery, or a gift ; and, 2d. That the draft being intended as a voluntary gift, rebuts the implication, which might otherwise arise, of a guaranty on the part of the drawer, that the draft should be accepted and paid.

We have been brought to this conclusion upon a full consideration of the authorities, and upon what we believe to be established principles applicable to this class of cases. In opposition to this doctrine, however, the case of *Wright* v. *Wright* is pressed upon us as an authoritative adjudication, which we are bound to follow. We believe in a rigid adherence to the doctrine of *stare decisis*. We regard it as necessary to pre-

Harris v. Clark.

serve the certainty, the stability, and the symmetry of any system of jurisprudence; and therefore, if we had any reason to believe that the decision in this case was made upon deliberate consideration, and that the adoption of the reasons assigned by the judge, was necessary to the decision of the questions before the court, we should certainly regard it as an authority binding upon us, and leave the error, if any there were, to be corrected in the court of the last resort. But we do not think the case of *Wright* v. *Wright* entitled to the authority of a judgment upon the point in question. The case itself was a non-enumerated motion, a decision upon which is never regarded as *res adjudicata*. The disposition of this class of cases is constantly made upon equitable considerations, which address themselves to the discretion of the court; and relief is frequently granted upon equitable terms, against the strict legal rights of the parties. The judgment in this case was merely a refusal to stay the proceedings in a cause, after verdict, to enable the applicant to move for a new trial, upon newly discovered evidence; and the decision might well have been placed upon the ground assumed by the circuit judge, in refusing to grant the same order, which in no respect involved the principle now under consideration. It is manifest from the report of that case, that it did not receive a deliberate examination either by the counsel or the court. No one of the cases, upon the subject of gifts *causa mortis*, appears to have been brought to the notice of the court; and none of the objections which in other cases have been held fatal, were alluded to by the judges, in the brief remarks that fell from them in disposing of the motion.

For these reasons we consider ourselves at liberty to dispose of this interesting and important question, unembarrassed by the authority of the decision in *Wright* v. *Wright*. We may also add, that that case has been reviewed, and its conclusions disapproved by the courts of Massachusetts, Connecticut, and Vermont. (*See the cases of Parish* v. *Stone, Raymond* v. *Sellick, and Holly* v. *Adams, before cited.*) The questions involved in this cause, both on account of their importance in

Harris *v.* Clark.

point of principle, and of the large amount depending upon their determination, are, doubtless, destined to be finally settled in the court of Appeals. And if that tribunal shall decide that our views are founded in error, and shall be able to place the plaintiff's right to recover upon legal and satisfactory grounds, we shall rejoice at the result; for, independently of the rule of law, which we have felt bound to adjudge against the plaintiff, we believe that the merits of this controversy are with him. We believe the draft to be genuine; and we do not doubt that it was the deliberate intention of the deceased that his only surviving sister, and nearest relative, should, in the event of his death, enjoy the munificent provision, which he had reason to believe his former partners, who were in possession of ample funds for the purpose, would feel it to be their pleasure as well as their duty to secure to her.

Whether the plaintiff may not have a remedy in equity, on a bill properly framed, upon a principle analogous to that which has been acted upon in several cases already alluded to, by which the plaintiff may, in a certain sense, be subrogated to the rights of the executors of the deceased, against the depositaries of the fund upon which the bill was drawn, we are not called on to decide. But believing that the present suit cannot be sustained, for the reasons already assigned, we direct the verdict in this cause to be set aside; and, in pursuance of the stipulation appended to the case, the same will be turned into a bill of exceptions, and a nonsuit entered, with an exception to that ruling of the circuit judge. (*a*)

(*a*) See *Craig & Strong* v. *Craig and others*, (3 *Barb. Chancery Rep.*,) where the same question is examined by the chancellor, and is decided in the same manner.