ESTHER A. JOHNSON, RESPONDENT, *v.* JACOB SPIES AND
OTHERS, APPELLANTS.

*Gifts inter vivos and causa mortis — difference between — when assignment necessary to pass title to choses in action — Code, § 399 — what inadmissible under.*

The difference between a gift *inter vivos* and one *causa mortis* pointed out, and the question whether or not mere delivery, without an assignment, is sufficient to pass the title in a gift *inter vivos*, of a chose in action, considered.

Any fact as to which a party is prohibited from testifying by section 399 of the Code, cannot be established inferentially from his testimony.

In the case of a gift *inter vivos*, of a chose in action, it is incumbent upon the alleged donee to show not only declarations by the former owner importing a gift, but an actual or constructive delivery.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was brought to foreclose a mortgage, made by Jacob Spies and Effa, his wife, to Rebecca Smalley, deceased, and duly recorded in Erie county.

The plaintiff claims to own the mortgage by gift from Mrs. Smalley in October, 1868. No assignment by the mortgagee to plaintiff was ever made. Mrs. Smalley died July 10th, 1871, leaving a last will in which the defendant Erb was made executor. The evidence given upon the trial, tending to establish a gift, was the declarations of Mrs. Smalley, which the plaintiff was allowed to prove, and the fact that the mortgage was found in the possession of the plaintiff after the death of Mrs. Smalley, who died at plaintiff's house.

*Thayer & Benedict*, for the appellants.

*P. G. Parker*, for the respondent.

GILBERT, J.:

If the question were a new one, I should say that a gift *inter vivos* of a bond and mortgage, or of any other chose in action, cannot be made by delivery only, but that an assignment, or some other act of transfer sufficient to pass the legal title, or an act which amounts to a declaration in writing on the part of the donor that he holds the subject of the gift in trust for the donee, is requisite to complete such a gift. Such is the rule in England. (See May on Voluntary and Fraudulent Alienations, part 5, chap. 2, where this subject is discussed and the authorities are collated.) Chancellor KENT, in his Commentaries, lays down the same rule. (2 Kent Com., 439.) He says: "The donor must part not only with the *possession*, but with the *dominion* of the property. If the thing given be a chose in action, the law requires an *assignment*, or some *equivalent instrument*, and the transfer must be actually executed." In *Gray* v. *Barton* (55 N. Y., 73), this language of the late chancellor is quoted by GROVER, J., in delivering the opinion of the Court of Appeals, as containing a correct statement of the rule of law upon this subject. There are good reasons for

dispensing with an assignment in cases of gifts *causa mortis*, which are not applicable to gifts *inter vivos*. The former are generally made under circumstances which preclude the formal transaction of business, and they are always made subject to the condition that if the donor does not recover, the gift shall take effect from his death, but that if he does recover, it shall be void. An assignment, therefore, would not accord with the nature of the transaction, for it would import an absolute instead of a conditional gift. ( *Veal* v. *Veal*, 27 Beav., 303 ; *Coutant* v. *Schuyler*, 1 Paige, 316 ; *Harris* v. *Clark*, 3 Com., 93.) But a gift *inter vivos* takes effect immediately. It is a voluntary transaction, without consideration. When a chose in action has been delivered to a purchaser in good faith, and for a valuable consideration, he acquires a good title in equity, although no assignment has been made ; and he is entitled to the aid of a court of equity to compel a transfer of the legal title to him. But a donee has no such right. He has paid nothing for the thing given, and is a mere volunteer. It is a general principle that a court of equity will not aid such a person to perfect an incomplete gift. The distinction in this respect between gifts *causa mortis* and *inter vivos*, as it seems to me, is a clear and solid one. It is distinctly pointed out in the English cases, and by this court in *Harris* v. *Clark, supra* (2 Barb., 99). The danger of allowing a gift of a chose in action, which is to take effect presently, to be completed by a delivery only, is manifest. It opens a wide door to fraud and perjury, and is therefore opposed to sound public policy. Nevertheless, there are decisions which declare that such a gift may be effectually made by delivery merely, without an assignment. One of them is *Westerlo* v. *De Witt* (36 N. Y., 345). That, however, was a case of a *donatio causa mortis*, and the remark of Mr. J. HUNT on this subject was *obiter*. Moreover, the cases cited by him were all of gifts of the same class. Another is *Hackney* v. *Vrooman* (62 Barb., 670), where it was held that the legal as well as the equitable title passed by delivery only, whether the gift was *inter vivos* or *causa mortis*. No doubt there are other cases holding that the distinction I have pointed out between these two classes of gifts is without foundation, and probably such an impression widely prevails among the profession. This case can be disposed of without deciding this point, and the question was not presented on the argument. We shall, there-

fore, content ourselves with having called attention to the conflict of authority on the subject, in the hope that it may lead to a definite and conclusive adjudication upon the question.

Assuming that a complete gift *inter vivos* may be made by a delivery without assignment, we are of opinion that the evidence in this case is insufficient to establish such a gift. There is no evidence of a delivery. The plaintiff was examined as a witness, and a delivery might perhaps be inferred from her testimony, if she was competent to prove the fact. But she was not, for the reason that the Code (§ 399) prohibited her from testifying to any personal transaction with the deceased. A fact that she could not prove directly, cannot be established inferentially by her testimony. (*Grey* v. *Grey*, 47 N. Y., 554; *McCotter* v. *Lawrence*, 11 S. C. [4 Hun], 107.) The evidence respecting the alleged gift may be summed up as follows : In the course of her testimony, the plaintiff was permitted to prove a conversation between the deceased and Mrs. Butler, on the occasion when the first payment on the bond and mortgage was made, viz., October 17th, 1868, in which the deceased said that she *would* give what was remaining to the plaintiff. Both the plaintiff and her husband testify that the plaintiff had possession of the bond and mortgage at this time, and that such possession had continued ever since. The husband testified that in the winter of 1868–69, the deceased told him that she had given the bond and mortgage to the plaintiff, and the latter was to pay her the interest of the money as long as she lived. How the plaintiff got possession of the bond and mortgage, does not appear. The deceased was a member of the plaintiff's family ; the bond and mortgage had been kept there ever since they were made ; and both the plaintiff and her husband appear to have had access to them always. The mere possession of the bond and mortgage by the plaintiff after her mother's death, therefore, is a fact of little significance. While we will presume nothing against the plaintiff, we cannot, under such circumstances, presume a delivery of the bond and mortgage to her. It was incumbent on her to show not only a declaration of the deceased importing a gift of the bond and mortgage, but an actual or constructive delivery thereof. A gift by words, without a delivery or something equivalent thereto, will not suffice, according to the loosest statement of the rule of law

upon this subject. It appears that, after the time when it is stated the bond and mortgage came into the possession of the plaintiff, her husband, who is the only witness who testifies to the verbal gift, acted as the agent of the deceased, and in that capacity received payments from the mortgagor, to be applied on the bond and mortgage. The deceased died July 10th, 1871. For more than two years after the alleged gift was made, the title to the bond and mortgage remained in her; she gave directions to the mortgagor respecting the manner in which he should make payments thereon, and nothing whatever appears to have been done by her, indicating any change in the ownership thereof. Under these circumstances, it is impossible to infer an actual, consummated gift. On the contrary, we think the deceased would have been very much surprised, if, when giving directions to the mortgagor respecting the payments he was about to make, she had been told she had parted with her interest in the bond and mortgage, and that she was giving directions about her daughter's property.

We are of opinion that the judgment is erroneous. There must therefore be a new trial before another referee, with costs to abide the event.

Present — SMITH, P. J., GILBERT and MERWIN, JJ.

Judgment reversed and new trial granted before another referee, costs to abide event.