Hunter *v.* Hunter.

---

John Hunter *vs.* Elias D. Hunter, executor, &c. of John Hunter, deceased.

A person named as executor, in a will, but who has not taken upon himself the execution of the will, and to whom letters testamentary have not been issued, may maintain an action against his co-executor, to establish his right to securities for the payment of money formerly owned by the testator, but alleged to have been assigned and given by him to the plaintiff; and to compel the delivery thereof to the plaintiff.

In such an action, the declarations of the testator that he intended to give, and had given, the securities to the plaintiff, are admissible in evidence.

A mere promise, or declaration of an intention, to give, however clear and positive, is not enough to constitute a valid gift *inter vivos*. The intention must be consummated, and carried into effect, by those acts which the law requires to divest the donor, and invest the donee with the right of property.

A delivery to the donee, in person, is not necessary. A delivery of the thing granted, to another person, for the use of the donee, is sufficient.

And the donee's subsequent demand of the property given, and his effort to obtain possession thereof, after the same has come to the hands of the donor's executor, is evidence of his acceptance of the gift.

In April, 1852; H. drew up with his own hand and executed, two deeds of assignment, to J. H. jun., one being of a land contract and the other of a bond and

mortgage, which assignments were witnessed by M. and then laid away by him, among his papers. In August following H., in the presence of Mrs H. and M., but in the absence of J. H. jun., produced certain papers, saying that he had been collecting together J.'s income; that one of the assignments was imperfect,- specifying the defect. He desired Mrs. H. to draw a new assignment, which she did. He then executed it, M. and Mrs. H. signing it as subscribing witnesses. Mrs. H. also witnessed the execution of another assignment, which had previously been subscribed by M. as a witness. He then placed the papers in a wrapper, in the inside of which he had previously written "Bonds assigned, and to be assigned to J. H. jun." Then followed a list of the bonds and mortgages. On the outside of the wrapper he wrote as follows: "22 Aug. '52. Memorandum of bonds and mortgages assigned to my grandson [J. H. jun.] and contracts for his use. J. H." He showed the indorsements to M., saying that he wanted her to recollect particularly what was going on. He then delivered the papers into the hands of Mrs. H., saying "These are J.'s papers. Put them away for J. There is no doubt, now, that they are his." Mrs. H. took the papers, and put them by themselves in a family safe where J. H. jun., the donor, and the defendant, each had papers. After the death of H. the papers were found by the defendant, in the same place where Mrs. H. had placed them, and enclosed in the same wrapper.

*Held* that this transaction had all the essential requisites of a valid gift *inter vivos*, and that the property in the securities passed to J. H. jun.

THE facts in this case are detailed in the opinion of the court.

*John Thompson*, for the plaintiff.

*H. Hogeboom*, for the defendant.

BROWN, J. The plaintiff is the grandson and the defendant the son of John Hunter deceased, late of Hunter's Island in the county of Westchester. Both of them are named as executors in the will of the deceased, and the object of the action is to establish the right of the plaintiff, and compel the delivery to him of certain choses in action or securities for the payment of money, formerly the property of the defendant's testator, but alleged in the complaint to have been assigned over and given by him to the plaintiff.

I can perceive no force in the defendant's objection to the plaintiff's right to maintain the action. At the common law,

doubtless, an executor named in the letters testamentary, who had taken upon himself to execute the trusts of the will, could not have maintained an action for the recovery of money or specific property against his co-executor, defending for and representing the estate. But if his right was clear, the very inability of the courts of law to afford an adequate remedy would have been ground for the interposition of the equitable powers of the court of chancery. The jurisdiction of the equity courts resulted from the inability of the courts of common law to afford relief in particular cases. And " where there is a clear right and yet there is no remedy in a court of law, or the remedy is not plain, adequate and complete, and adapted to the particular exigency, then and in such cases courts of equity will maintain jurisdiction." (*Stor. Æq. Pl.* § 473. *See also Lube's Eq. Pl.* 4, *note*.) It appears, however, that letters testamentary have not issued to the plaintiff upon the will of John Hunter deceased, and that he has not taken upon himself the burthen of its execution. If he was merely claiming a debt due to him from the estate he could not proceed to prove his claim before the surrogate according to the provisions of section 33 of the act concerning the duties of executors and administrators in the payment of debts and legacies. (2 *R. S.* 88.) Section 15 (2 *R. S.* 71) excludes him from all power and authority as an executor, because he is not named in the letters, and declares that he shall have no power as such until he shall appear and qualify. The same objection was taken in *Rawlinson* v. *Shaw*, (3 *Durnford & East*, 557 ;) and Lord Kenyon said, " it is impossible to entertain the least doubt in the case. The argument is that if A. owe B. and choose to make him his executor, though B. will not act, his legal remedy is extinguished. The proposition is too monstrous to admit of any argument." This is not a case for the recovery of an ordinary debt, but the remedy sought is one of those which before the code was one of the subjects of equity jurisdiction.

. The referee who took the testimony received as evidence, under the defendant's objection, the declarations of the defendant's testator, that he intended to give, and had given, the securities in question to the plaintiff. In this he was right. The plead-

ings on both sides concede that they were at one time the property of the testator. The defendant does not claim to hold them in his own right, as purchaser or creditor, but he claims by act and operation of law, as the personal representative of John Hunter. The real question then is upon the right of property; whether it was in the plaintiff or in the defendant's testator, at the time of his death. The defendant, in respect to the question, stands in the place of the deceased, and must submit to have the title affected by his acts and declarations. (2 *Cowen & Hill's Notes, p.* 644, *note* 481. 1 *Greenl. Ev.* 238.)

The principal question is upon the right of property in the two written securities mentioned in the complaint. The first is a contract for the sale of certain lands in the county of Ulster, made between John Hunter deceased, of the one part, and Henry Wilbur and others, of the other part, upon which there was due, and to grow due to John Hunter, the sum of $8000, and the second is a bond and mortgage made by Ezra Fitch and Dennis W. Skeel, upon lands in Saugerties, Ulster county, to secure the payment of $15,000, with the interest, to John Hunter. For the contract with Wilbur and others, the plaintiff produced and proved a deed of assignment from John Hunter to himself, in the usual form, and under seal, for the consideration of one dollar, and dated the 29th day of April, 1852. For the bond and mortgage of Fitch & Skeel, he also produced and proved a similar deed of assignment, dated August 21st, 1852. Both deeds were witnessed by Mary Mills, a lady who resided in the family of the testator, and Mrs. Ann M. Hunter, the mother of the plaintiff. It is not claimed that the plaintiff purchased the securities, in the ordinary sense of the term, or that he paid or parted with any valuable consideration for them. His title, if any, must be maintained as a gift. It is evident that it is not one of that class known as *donatio causa mortis,* because the essential conditions of such a gift are wanting. It was not made in the last illness of the donor, and in contemplation and expectation of death, and to take effect in that event. He was indeed a man far advanced in life, but he was in the enjoyment of his usual good health. He had already made his will, in which he

had provided for his grandson the plaintiff.   And his declarations evince an intention—if the property in the securities passed at all—that it should pass immediately and absolutely, to furnish the plaintiff with a means of present subsistence suitable to his condition and independent of his father.   His title must stand upon the facts which the law demands to constitute a gift *inter vivos ;* a donation which has no reference to the future, but has present and absolute effect.   There is evidence that the testator had adopted, educated, and provided for the plaintiff for some years before the date of the deeds of assignment.   He was about to be married to a lady in Charleston, South Carolina, and his grandfather had undertaken at his own expense to build a house as a place of residence for him, which was then in progress of erection.   Upon several occasions the grandfather declared it to be his intention that his grandson should have $40,000 in securities for his support, to make him independent of his father.   To James Powers, Esquire, his friend and confidential adviser, he named the Fitch & Skeel bond and mortgage, and the contract of Wilbur and others, as two of the securities he intended to give him.   A mere promise or declaration of an intention to give, however clear and positive, is not enough.   The intention must be consummated and carried into effect by those acts which the law requires to divest the donor, and invest the donee, with the right of property.   There must be a delivery in fact.   Delivery in this, as in every other case, must be according to the nature of the thing.   It must be an actual delivery, so far as the subject is capable of delivery.   It must be *secundum subjectam materiam,* and be the true and effectual way of obtaining the command and dominion of the subject.   If the thing be not capable of actual delivery, there must be some act equivalent to it.   The donor must part not only with the possession, but with the dominion of the property.   If the thing given be a chose in action, the law requires an assignment or some equivalent instrument, and the transfer must be actually executed. (2 *Kent's Com.* 439.)   "A true and proper gift or grant is always accompanied with delivery of possession, and takes effect immediately, as if A. gives to B. £100, or a flock of sheep, and

Hunter *v.* Hunter.

puts him in possession of them directly, it is then a gift executed in the donee; and it is not in the donor's power to retract it though he did it without any consideration or recompense; unless it be prejudicial to creditors; or the donor were under any legal incapacity, as infancy, coverture duress, or the like; or if he were drawn in, circumvented or imposed upon by false pretenses, ebriety or surprise. But if the gift does not take effect by delivery of immediate possession, it is then not properly a gift, but a contract, and this a man cannot be compelled to perform, but upon sufficient consideration." (2 *Black. Com.* 441.) "Gifts are valid without consideration or actual value paid in return. But there must be a delivery of possession. The contract must have been executed. The thing given must be put into the hands of the donee, or placed within his power by delivery of the means of obtaining it." (*Harris* v. *Clark*, 3 *Com.* 100.) This branch of the law has been repeatedly and thoroughly examined, both in our own and in the English courts, and the reported cases are numerous. They all affirm the doctrine of the elementary writers, to whose commentaries I have referred, and need not be particularly named.

The proof of the actual delivery of the securities in question is to be found principally in the testimony of Mary Mills, one of the subscribing witnesses to the deeds of assignment. It appears that on the 19th of April, 1852, John Hunter, sen. drew up with his own hand, and executed, two deeds of assignment to the plaintiff, one for the Wilbur contract, and one for the Fitch & Skeel bond and mortgage, which were witnessed by Mary Mills, and then laid away by him, amongst his papers. At this time the plaintiff was absent in Charleston. There is no evidence that the deeds were then delivered to the plaintiff, or to any other person for his use. In August following (about the 21st,) the testator being at his residence at Hunter's Island with Mrs. Ann M. Hunter and Mary Mills, went up stairs and brought down certain papers into the library, and said to Mrs. Hunter that he had been collecting together John's income; that one of the assignments was imperfect—the one dollar consideration being omitted. He desired her to draw a new assignment, which she

Hunter *v.* Hunter.

did immediately. He then executed it, and both Miss Mills and Mrs. Hunter signed it as subscribing witnesses. This was for the Fitch & Skeel bond and mortgage. Mrs. Hunter also subscribed as a witness the assignment of the Wilbur contract, which had previously been subscribed by Mary Mills. John Hunter, sen. then placed the papers in a wrapper, in the inside of which he had previously written

"Bonds assigned and to be assigned to John Hunter, junior.

Robert R. Hunter's bond and mortgage, Williamsburgh, $8,800.

Bond and mortgage, Saugerties, $15,000.

George North's bond and mortgage, $9000.

Henry Wilbur and others bond and mortgage, Napanock, $8000."

On the outside of the wrapper, he wrote as follows, "22 Aug. '52. Memorandum of bonds and mortgages, assigned to my grandson, and contracts for his use. Jno. Hunter."

He then exhibited the indorsements to Mary Mills, the witness, and said to her, "See this, Mary; I want you to recollect particularly what is going on." He then delivered the papers into the hands of Mrs. Ann M. Hunter, and said to her, "These are John's papers. Put them away for John. There is no doubt now that they are his." Mrs. Hunter took the papers and put them by themselves in a pigeon-hole in a family safe, where the plaintiff, John Hunter, sen., and the defendant each had papers. At this time and at the time of John Hunter sen.'s death (which occurred on the 12th of September following,) the plaintiff and the defendant were at Newport. The deeds of assignment, together with the bond and mortgage and the contract in dispute, were found by the defendant after the death of the donor enclosed in the same wrapper and in the same place where Mrs. Hunter placed them.

The evidence of the testator's declarations after the papers were given to Mrs. Hunter, and that in regard to the subsequent modification of his will, I do not deem it worth while to notice, because it affects the question of the delivery remotely, if at all. It will be seen that the subject of the gift is definite

and certain. The deeds of assignment are in the customary form, under seal, professing to be for a valuable consideration, containing words of present conveyance entirely sufficient to pass the title. The delivery was not to the plaintiff in person, but that was not necessary. The delivery to Mrs. Ann M. Hunter for the use of the plaintiff was equivalent to a delivery to him. And his subsequent demand of the written evidence of the assigned property, and his effort to obtain possession of them after they came to the hands of the defendant, is evidence of his acceptance of the gift. To say that a delivery to a third person is not sufficient is to hold that there can be no valid gift, when the donee is not present with the donor to receive the subject into his own hands. Indeed, I do not see what other act the donor could have done to make the transfer and delivery more complete than it was. If he had followed the plaintiff to Newport, or recalled him to Hunter's Island, so that he could have placed the papers in his own hands, the present objection would have been removed from the case, but he would not have parted with all power and dominion over them more absolutely and effectually than he did when he placed them in the hands of Mrs. Hunter, telling her to hold them for her son's use. They were not placed in her hands to be kept for John Hunter, sen. She was not his agent. That relation did not exist. They were delivered to her as the agent and representative of her absent son, to be kept by her for his use and benefit. The donor not only parted with the possession of the subject of the gift, but he voluntarily gave up all dominion and control over it, so that he could not have resumed it had he been so inclined. There is no proof that it ever returned to his possession or that he ever attempted to exert any control over it; for placing the papers in the safe where the donor kept some of his papers, was not a restoration of the possession to him. I find in the transaction all the essential requisites of a valid gift, *inter vivos*, and that the property in the securities passed to the plaintiff.

The plaintiff is therefore entitled to a decree or judgment establishing his right to the securities, and for their delivery over

to him, with the deeds of assignment, together with an account of any sums of money collected by the defendant upon them, since the death of his testator. The costs of both parties to be paid out of the estate.

[ORANGE SPECIAL TERM, April 2, 1855. *Brown*, Justice.]