SMITH *vs.* MAINE and BENTLEY.

25b    33
65 AD²596

In an action by an individual to recover the possession of promissory notes which he claims by virtue of a *donatio mortis causa,* the declarations of the alleged donor, made after he had delivered the possession of the notes to the plaintiff, to the effect that he had given the same to the plaintiff, are admissible in evidence against individuals claiming to hold the notes as the personal representatives of the alleged donor.

Evidence of the previous declarations of the alleged donor, of his intentions to give such notes to the plaintiff, is also admissible, where there is an ambiguity in the language employed by the donor in making the gift.

Smith *v.* Maine.

Such declarations furnish evidence of the *quo animo* with which he delivered over the notes to the donee; and are primary evidence to prove the gift.

B., a bachelor, 84 years of age, when upon his sick bed, and in the immediate apprehension of death, directed the plaintiff who lived in his house and took care of him, to call in E. to make an invoice of his notes. This was done by E. and the plaintiff, and they returned to the bedside of B., when the plaintiff, having the notes in his hands, asked B. what he should do with them. B. replied " take them, and do what you are a mind to with them." The plaintiff accordingly took the notes and put them in his bureau. *Held* that there was such an ambiguity in the language employed by B. as justified the admision of parol evidence to aid in its interpretation.

*Held also* that the fact that the plaintiff was a stranger in blood to B., and that B. had relatives living, upon whom he had been in the habit of bestowing all the income of his property, rendered the declarations of B. that " he should pay off his relatives all he intended to give them, in his lifetime ;" that " he had paid his relatives what he intended to give them ;" and that " he should not give them any more of his property," pertinent evidence, in an action by the donee, against the personal representatives of the donor, to recover the possession of the notes; as they negatived the intent to give the notes to such relatives, and repelled the natural presumption that B. would give his property to them, instead of a stranger to his blood, at his death.

*Held further*, that evidence showing the relations which had existed between B. and the plaintiff, for twenty years previous to his death ; that B. considered that the plaintiff had saved his life, by his attentive care and nursing, at a former period; that he and his wife had nursed him in his old age, and administered to all his wants, in the infirmity of his declining years ; and that the plaintiff had rendered valuable services in the oversight and transacting of his business for him, was also properly admitted, as furnishing a reasonable motive to B. for making a stranger to his blood the heir of so much of his property.

That such testimony was admissible also, in order to aid in giving a construction to the language employed in making the alleged gift.

The rule—applied in the construction of a will—admitting proof of the extrinsic facts and circumstances which show the existing relations between the parties, applies with still greater force to the case of a *gift*, where there is no written will to limit or exclude any extrinsic evidence material to establish the meaning of the donor's language.

The delivery of promissory notes, by A. to B. on the demand of the latter, under protest by A. that he will not relinquish his title to them, by such act, and upon the agreement of B. that such delivery shall not prejudice A.'s claim to the notes, will not deprive A. of any right or title to the notes which he may have.

MOTION for a new trial, upon a case. The action was brought to recover about $8000 worth of promissory notes, which the defendants claimed to hold as the administrators of

Smith *v.* Maine.

George Bentley, deceased. The plaintiff claimed that Bentley gave the notes to him as a gift *mortis causa*, in his last illness and in expectation of death, on the 20th of April, 1854. The donor died on the 24th of April, 1854. The notes were delivered to the plaintiff at the time of the gift and retained by him until the 16th of May, 1854, when the defendants took possession of them, under an agreement with the plaintiff that their taking possession of said notes, *should not prejudice his claim to them.* The plaintiff subsequently demanded the notes of the defendants, who refused to give them up; when this action was commenced. The donor had no wife or family; the plaintiff had done his business for over twenty years, had taken care of him in sickness, and he and his wife had been selected by the deceased to live with and take care of him during the last years of his life. The deceased placed most implicit confidence in the plaintiff and trusted him with the management of all his money matters. He was strongly attached to the plaintiff, and *frequently declared* during the last twenty years of his life, that he should give his notes to the plaintiff when he was through with them. Four days before Bentley died, Benjamin Enos a neighbor of his, made an inventory of the notes, with Smith's assistance and at his request. At the time the inventory was made, Bentley lay sick on his death bed, and Smith had been told by the doctor that he could not recover. After Enos and Smith had completed the inventory, they returned to the bedroom where Bentley lay, and told him they had completed it. Bentley asked the number of the notes. Enos held the schedule in his hand and said fifty, and asked if that was right. Bentley said he thought it was, and asked the amount. Enos said $7932.45, without interest, and Bentley said he thought that was right. Smith asked Bentley what should be done with the schedule, and Bentley replied, he didn't care. Smith asked if two should be made. The old man said, "No, not necessary." Smith asked Bentley if Enos should keep the schedule; Bentley said "Yes." Smith, holding the notes in his hand, and standing by the side of the bed said to Bentley, "What shall I do with the notes?" and Bent-

ley replied, " *Take them and do what you are a mind to with them.*" After he said this, Smith said to Bentley ; " This is all except a small mortgage, and that will be of no use to any one unless it is signed over." Bentley said, " Yes, let that go." Enos went out and left Smith in the room. After the gift of the notes to the plaintiff and on the afternoon of the *same day,* Bentley stated that he had *given his money all away.* Also, the night after the gift he said that the plaintiff had had a *hard time* of it ; but *he* had *done enough* for him *that day to pay him for all his trouble.* The deceased had often declared that his relations, brothers and sisters, would get none of his property after his death. That he was paying them all off in his life time ; that he had paid them all off but one, &c. His, Bentley's, relations were quite well off. He had given them some $3000 or $4000. He also left a farm worth $3500 or $4000. The cause was tried at the Madison circuit, before Justice MASON, and the jury gave the plaintiff a verdict for $8000.

*S. T. Fairchild,* for the defendants. I. The evidence does not prove a gift. (1.) There was no tradition—no delivery of the notes by the donor to the donee for the purpose of a gift ; but the notes were put into Smith's possession for the purpose of having an inventory made of them. (*Huntington* v. *Gilmore,* 14 *Barb.* 243.) (2.) Admitting there was a delivery, Smith's possession under it was not continued ; but the notes were returned by him to the desk from which they had been taken, and remained there in the custody and under the control of Bentley till his death. (*Craig* v. *Craig,* 3 *Barb. Ch. R.* 77. *Bunn* v. *Markham,* 7 *Taunt.* 224.) (3.) The evidence falls short of the clear and satisfactory character required by law to sustain a gift of this kind ; and even if Bentley had made a will in Smith's favor, instead of an inventory, the court would, considering the confidential relation that Smith held to Bentley, have set the will aside. (*Kenney* v. *Pub. Adm.,* 2 *Brad.* 319. *Lovelass on Wills,* 338. *Ingham* v. *Wyatt,* 1 *Hagg.* 384. 1 *Am. Law Reg.* 25. *Story's Eq. Jur.* §§ 314,

315. *Walter* v. *Hodge,* 2 *Swan.* 97. *Staniland* v. *Willett,* 12 *Eng. Law and Eq. R.* 42.)

II. Admitting that the transaction at the time the inventory was made was in form and substance a complete gift, and was so intended by all parties ; still the evidence shows that the gift was revoked by Bentley before he died. There is no way of explaining Smith's conduct after Bentley's death, in applying for letters of administration on these notes, in saying that they belonged to the estate, in refusing to receive pay on them, and in giving them over to the administrators—except on the supposition that he never regarded the notes as his, or that he knew that the pretended gift of them had been revoked. Bentley could revoke the gift without Smith's presence, and even against his will. (*Merchant* v. *Merchant,* 2 *Brad.* 432, 444.)

III. The act of giving the notes to the administrators, by Smith, notwithstanding the protest, is not only evidence that he never owned them, but is a waiver of his rights, if he ever had any. If he had given them to Bentley, he could not, the next instant, maintain a suit against him for them ; nor can he against Bentley's administrators. He was under no duress, but yielded voluntarily to a demand of a right, and thereby admitted it. If he can sue the next instant, he may wait six years after the administrators have distributed the notes among the heirs, and then sue. (*Batten on Spec. Per.* 40. *Mowatt* v. *Wright,* 1 *Wend.* 355. *Fleetwood* v. *City of New York,* 2 *Sandf. S. C. R.* 481–2. *Vibbard* v. *Johnson,* 19 *John.* 77. *Briggs* v. *Supervisors,* 3 *Denio,* 39. *Benson* v. *Munson,* 7 *Cush.* 125. *Edwards* v. *Jones,* 1 *Mylne & Craig,* 226.)

IV. The action cannot be maintained against the defendants *as individuals.* The notes came into the *possession* and *custody* of the defendant Maine as *administrator* and into the *custody* of *both defendants as administrators,* and by the plaintiff's act. They have not, jointly or severally, converted the notes to their individual use. They have exercised dominion over them only as administrators, and this they were authorized to do by the plaintiff ; and they have a right to hold the notes, even though there was a valid gift, until it is ascertained

by an accounting before the surrogate, that there are no debts against the estate.

V. The action cannot be maintained against the defendant Bentley. He has never had actual possession of the notes, and has never exercised any control over them except as co-administrator. He said, " *We* shall hold them." He never knew of the protest, nor did he say the giving up of the notes should not prejudice Smith's claim, and he did not know that Maine had said so. An administrator is not liable for the acts of his co-administrator. (7 *Cush.* 125.)

VI. The judge erred in allowing evidence that the plaintiff had rendered services for the deceased. The plaintiff's claim, as he stated it at the opening of the trial, is not founded upon the ground of services rendered, or consideration paid, but upon a gift. The evidence is therefore immaterial and calculated to mislead the jury. He erred also in allowing evidence of declarations tending to show that he had given the notes to Smith.

VII. The judge erred in allowing evidence of the declarations of the deceased that he intended Smith should have his property and his relations should have no more. (*Parker* v. *Marston*, 27 *Maine*, 196, *U. S. Dig.* 1849, *p.* 146. *Anderson* v. *Baker*, 1 *Kelly*, 595, *U. S. Dig.* 1847, *p.* 288.) A purpose to give, continued without change through twenty years, and evidenced by a thousand promises to give, would confer no title. The transaction at the time of the alleged gift was not equivocal. If it was it did not constitute a gift. A transaction out of which a gift of this kind is claimed should be clear, unequivocal, complete—one which any one witnessing will understand as evincing an intention on the part of the donor to give, or it will not be upheld. The evidence objected to was calculated to mislead, and did mislead, the jury. (*Waterman* v. *Whitney*, 1 *Kernan*, 157. *Paige* v. *Cagwin*, 7 *Hill*, 361.)

VIII. The judge erred in denying the motion for a nonsuit, and in his refusal to charge the jury as requested by the defendants' counsel. The verdict should therefore be set aside and a new trial ordered.

*Goodwin & Mitchell,* for the plaintiff. I. The declarations of the donor, that he intended at his death to give his notes to the plaintiff, and his remarks showing *that,* to be his intention, was proper and material evidence, and the court's decisions, admitting this species of testimony, were correct. These declarations and remarks, continued through many years and to different individuals, throw a strong light upon the circumstances of the gift. They give a clear and decided meaning to the expressions the donor used in making it. They make *plain and unmistakable* his *purpose,* and show that this "*donatio mortis causa*" was but the consummation of long fixed *intentions*—their *fulfillment.* (19 *Barb.* 631.) (1.) These declarations and remarks of the *intestate* are admissible as evidence against the defendants, who claim as his administrators, by reason of the *privity* that exists between them. They belong to the class of "privies in representation, as executors and testators, administrators and intestate." "The admissions of the represented are receivable in evidence against the *representative* in the *same manner* as they would have been against the party *represented.*" "And the declarations of an *intestate* are admissible against his administrator or any other claiming in his right." (1 *Greenl. Ev.* 246, §189. *Smith* v. *Smith,* 3 *Bing.* 29. *Ivat* v. *Finch,* 1 *Taunt.* 141. 16 *Mass. R.* 108.) Suppose this had been a gift *inter vivos,* and a trial was had between the donor and donee, as to the gift, would not the declarations and remarks of the donor be evidence in behalf of the donee? It will be at once seen that in respect to the *privity* that exists in this case, they are *equally* and to the same extent evidence against the representatives, the *administrators and defendants* in this action. (2.) The language of the *gift* in this case was, "take them [the notes] and do what you are a mind to with them." Now although it would seem from these words and the attendant circumstances, that there could be no doubt of the intention of the intestate to make the gift, yet the defendants claimed that there was no intention to make such gift, and that therefore the plaintiff could not recover. This was the main question on the trial. The plaintiff had a right to strengthen and fortify his position by gathering around

it *all* the evidence that went to show a gift of these notes to him and which would exhibit, in the most palpable manner, the intention of the intestate, and the meaning of the words he used. This was effectually done, by first, proving the declarations and remarks of the intestate up to the time of the transaction in question, that he intended at his death to give these notes to the plaintiff. Second. That on his death bed he gave the notes to the plaintiff, telling him to take them and do as he had a mind to with them; and 3d. That after this gift and delivery, and on the same day, he declared to the effect that he had given them away, and that he had done that day enough to pay the plaintiff for all his trouble. This evidence would all tend to aid the court and jury in arriving at the truth and in giving effect to the desires of the deceased. The declarations, remarks and acts of the testator or intestate are evidence to establish their *intentions*, and are of themselves proper and legitimate evidence, and are only excluded, like all other parol evidence, when it comes in conflict with evidence of a higher nature. Thus, in the case of *Williams* v. *Carey, executor, &c.* it was held, " on the question, for what purpose was the bequest made ? that parol evidence of her remarks and talk to show her [the testatrix's] intentions was not objectionable, unless it went to vary or contradict the will ; such evidence can be received to explain things about which the will is silent, or which are consistent with it." (8 *Cowen,* 246. 4 *Wend* 443, 451.) Even in cases of gifts by will, the declarations of the testator, as to the bequest, may be given in evidence in cases of latent ambiguity, to show his intentions. Such proof is only excluded, when there is no ambiguity, or when the attempt is to show a mistake in drawing the will. (1 *Wend.* 541, 548.) Declarations of the testator, made before or after the making of a will, to explain the meaning of terms used, or defining the property devised, are admissible. (22 *Wend.* 148, 151–154. 16 *Ves.* 481.) The declarations of the testator are also evidence to show that a will once executed by him had been destroyed. (6 *Wend.* 173, 188. 1 *Greenl. Ev.* 388, *n.* 4. 2 *Ves.* 216. 4 *Hare,* 251.) In the case of an interlineation in a will, the declarations of the testator, made by

Smith *v.* Maine.

him before the will was made, " that he intended to make provision in his will for A. P.," but not specifying in particular the property which he intended to leave to her, were received in evidence to raise an inference that the interlineation as to A. P. was inserted before the will was executed. (6 *Eng. L. and Eq. Rep.* 155.) The reasoning of the judge in this case of *Shallcross* v. *Palmer and others,* is directly in point as to the admissions of acts and declarations to prove the intention of the testator or of the intestate donor. The principle to be deduced from these decisions, and many others that might be cited, is, that the acts and declarations of a testator or intestate donor, are proper and material evidence to establish his intention in making the bequest or gift, and to prove it; that whenever they reflect light upon the transaction, they may be received, unless they come in conflict with evidence of a higher nature, as to revoke, vary or contradict a written will (which is prohibited by statute.) In this case of a gift by parol, and delivery, they come in conflict with no other rule of evidence, and are proper to show what the intestate meant by the language he used, and his purpose in giving the notes to the plaintiff. This is the rule as established in *Smith* v. *Smith,* which was an action of trover to recover a watch; both parties claimed the watch as a gift from the intestate. The defendant also gave in evidence letters of administration; whereupon the court admitted the declarations of the intestate, made at various times, to establish the fact of the gift. (3 *Bing.* 29. 32 *Eng. Com. L. Rep.* 25.) Also in *Milford* v. *Bellingham,* as to the gift of a slave, the court received evidence of the declarations of the intestate made several years before, that he wished to have the slave brought up so as to be useful to his daughters, and other remarks, showing that the daughters held the slave as a gift from the intestate. (16 *Mass. R.* 108.)

II. The same rule applies to the evidence admitted at fols. 63, 115. The declarations of the intestate, going to show that he had made the gift, are proper evidence, and there is no error in the decisions of the court in regard thereto. It all throws light upon the matter, and establishes the intention of the intestate in

the strongest possible manner. The court and jury are entitled
to this evidence to enable them to do justice in the premises.
This evidence is all admissible under the decisions before cited.
(*Also see* 1 *Greenl. Ev.* 381, 2; 1 *Cowen & Hill, pp.* 645, 590,
657; 15 *Barb.* 665 *to* 668; *Wigram on Wills,* 104, 194, 5.)

III. The evidence of the relations existing between the intes-
tate and the plaintiff—the extent to which the plaintiff did his
business—the donor's attachment to the plaintiff, and his decla-
rations and intention in respect to his relatives and his having
given them all the property that he should, during his life, were
all matters of proof proper to be received and considered.
(1.) These things are a part of the legitimate history of the case,
and are admissible under the same principles settled by the fore-
going decisions. All of these facts and circumstances reflect
more or less light upon the transaction, and the intention of the
donor. The facts, circumstances and declarations are all mate-
rial, and have a bearing upon the point at issue. Not being
related to the donor, the plaintiff must have the right to show
that he is not a stranger, and that there are reasons either from
affection, services, or other causes, why the donor should prefer
him to his relatives. If the language of the gift is at all equiv-
ocal, if there is ambiguity in it, the fact that the donee was an
entire stranger, that no reason could exist for making the dona-
tion, would afford a strong inference that the intestate did not
intend to make a gift. Would not the plaintiff have a right to re-
pel this presumption by showing the facts to be otherwise; that
he had saved the intestate's life; done him faithful service for
years, and that a strong attachment existed between them?
This, together with the intestate's declarations, would go far to
give effect and meaning to the terms used by the donor. "Dec-
larations proving or tending to prove a material fact, collateral to
the question of intention, where such fact would go in aid of the in-
terpretation of the testator's words, are, on the principles already
stated, admissible." (1 *Greenl.* § 291.) It follows that the fact
itself may be proved when it will aid in the interpretation of the
words of the donor in making the gift. "Every claimant under
a will has a right to require that a court of construction, in the

execution of its office, shall, by means of extrinsic evidence, place itself in the situation of the testator, the meaning of whose language it is called upon to declare." (1 *Greenl. Ev.* 381, *n.* 1. *Wigram on Wills*, 5, 76.) This can only be done by proving the extrinsic facts and circumstances which show the relations between the parties, the feelings and situation of the testator. This rule applies with still greater force to the case of a gift by parol, where there is no written will to exclude or limit this evidence of extrinsic facts, which are all important to establish the meaning of the donor's language; to place the court in his situation, all of the proof respecting the facts and expressions is unobjectionable under this rule: (*See also Boys* v. *Williams*, 2 *Russ. & M.* 689. Where parol evidence of the testator's property and situation was held admissible to determine whether a bequest of stock was intended as a specific or pecuniary legacy. (1 *Greenl. Ev.* 381, *note* 1. *Wigram on Ev.* 38, 39, *and cases there cited. Also see the cases cited in* 6 *Wend.* 176, 191; 1 *id.* 549; 4 *id.* 451; 6 *Eng. L. and Eq. R.* 164.) (2.) In the case of a gift to a wife, the donor being dead, the court held, that all the facts and circumstances must be proved to the court, to show that the donor understood the nature and effect of the transaction. (12 *Eng. Law and Eq. R.* 144.) (3.) The objection that any of this evidence is too remote is not tenable. The sickness of the donor 20 years ago, and the plaintiff's taking care of him, was the commencement of those intimate relations between the parties, which continued up to the time of the death of the donor. It was this devotion to him in his sickness that made so strong an impression on the mind of the donor, and furnishes the explanation of his after conduct. (4.) There are many reasons why evidence like this, given by the plaintiff, should not be excluded. Its exclusion would always work injustice, while its admission would aid in promoting the ends of truth and justice. In this case it is clear from the evidence that the intention of the intestate to make this gift, had been long fixed and settled in his own mind. He made no secret of it; it was fully understood between the donor and the plaintiff. The delivery of the notes to the plaintiff by the do-

nor while on his death bed, with the expressions he then used, was but the consummation of the understanding which had long existed between the parties. Under such circumstances, with the matter fixed in their own minds, the language used would be different from what it otherwise would. The transaction and language shows a previous understanding between the parties. The circumstances, facts and declarations given in evidence, prove that intention and understanding, and enables the court to declare the meaning of the intestate's language. This evidence was also proper and material to prove the competency of the donor. This was one of the purposes for which it was offered.

IV. The ruling of the court denying the defendants' motion for a nonsuit was correct. (1.) The action was properly brought and sustained against the defendants in their individual capacity. If the notes belonged to the plaintiff, and he was entitled to the possession of them, and the defendants refused to deliver them up upon demand, but wrongfully retained possession of them, it matters not whether they claimed to hold them, as administrators or not; they are liable to the plaintiff for the tort, in their individual capacity. Even if the administrators had brought an action to recover these notes, they could have sued in their individual capacity. On the same principle they are liable, in their individual capacity, for wrongs as to property, after the death of the intestate, though their claim of right is derived from the intestate. (4 *Hill,* 57. 9 *Wend.* 491.) (2.) The action was sustained against both defendants. There was proof sufficient to go to the jury, and the court could not therefore nonsuit the plaintiff as to the defendant Bentley. Bentley was an administrator with the defendant Maine. He was connected with the taking of the notes; on demand he refused to give up the notes, and said that he and Maine should keep them, and the plaintiff could not have them. By their answer they claim the notes as administrators of the intestate. The defendant Bentley assumed to exercise dominion over the notes, in defiance of the plaintiff's right to them, and in this both defendants acted together. This is a conversion. (7 *John.* 254. 10 *id.* 172. 5

*Cowen*, 323. 11 *Barb.* 642.) (3.) The taking of the notes by the defendants as administrators, and the plaintiff yielding them up under the circumstances proved, could not bar the plaintiff from bringing this action. The plaintiff then declared that the notes were his; that if they took them he should sue— should prosecute for the notes; and made his protest against their taking them. If he was the owner of the notes, this could not deprive him of his property. (4.) But a perfect answer to the motion upon this point is, that the defendants are estopped from making this claim. It was declared by the defendants that the delivery should not prejudice the plaintiff's claim to the notes. With this assurance, and relying upon it, he allowed the defendants to take the notes, under protest, and with the assertion of his right to them. This is a perfect estoppel against the defendants as regards this point. (9 *Barb.* 618. 12 *id.* 427.)

V. The court was right in refusing to charge the jury as requested by the defendants' counsel. It was a question of fact for the jury. The evidence established a tradition of the notes from the donor to the donee, with an intent to make the gift, and the full consummation of that intent by a valid gift of the notes to the plaintiff. This is a strong case of *donatio mortis causa.* The language of the donor, in making the gift, when carefully considered, is clear and expressive, and in view of the flood of light thrown upon this transaction by the surrounding circumstances—the acts and declarations of the intestate, illustrating with unerring certainty the meaning and intention of his conduct and the words he used—there is no room left for doubt. The words of the donor are full as certain and expressive as in the case of *Gardner* v. *Parker*, (3 *Mad. Ch. R.* 184. *Willard's Eq. Jr.* 554.) Also as to *donatio mortis causa*, as established by the proof in the present case and sustained by the law, see *Willard's Eq.* 553; 2 *Barb.* 98; 2 *Kent*, 444; 1 *Paige*, 316; 3 *Comst.* 114; 7 *Eng. Law and Eq. R.* 134; 1 *Story's Eq.* § 660-8. The verdict of the jury has but given effect to the long cherished wish and intention of the deceased donor, as manifested by him through the last 20

years of his life, and as finally consummated upon his death bed. There exists in this whole case no good reason for disturbing the verdict.

*By the Court,* MASON, J. When actions had names, this would have been known as an action of trover, brought to recover for a package of promissory notes, the value of which, as admitted upon the trial, was $8000. The plaintiff claimed title to the notes through an executed gift, or *donatio causa mortis,* from George Bentley. The defendants, who are the administrators of the estate of said Bentley, claim to hold the notes as a part of the assets of the estate of said Bentley. Upon the trial of the cause the plaintiff proved that George Bentley, a bachelor, 84 years of age, on the 20th day of April, 1854, when upon his sick bed, and soon apprehending death, directed the plaintiff, who with his family lived in Bentley's house, and with whom Bentley lived, and by whom he was taken care of, to call in Mr. Enos, to make an invoice of his notes; that this was done by Enos and the plaintiff, and they returned to the sick room where Bentley lay, and Smith, with the notes in his hands, went up to the bed-side of Bentley and asked him what he should do with the notes; that Bentley replied, "*take them and do what you are a mind to with them.*" Smith then said to Bentley, "this is all except a small mortgage, and that will be of no use to any one unless it is assigned over;" that Bentley said, "yes, let that go." Smith took the notes and put them in his own bureau. Four days after this, and on the 24th of April, 1854, Bentley died, and the notes were proved to be in Smith's possession after Bentley's death. The nearest relatives of Bentley are brothers and sisters.

As the defendants claim to hold these notes in right of the intestate George Bentley, and as the legal representatives of the estate, the cases of *Ivatt* v. *Finch,* (1 *Taunt.* 144,) and *Smith* v. *Smith,* (3 *Bing. N. C.* 29,) are authorities in point, to show that the declarations of George Bentley, tending to prove that he had given these notes to the plaintiff, are legitimate evidence against the defendants. The evidence of the

declarations of George Bentley, therefore, after he had passed the notes over to the plaintiff, made on the afternoon of the same day, and also those made on the night of the alleged gift, were properly admitted in evidence upon the trial, as they tended to show that the intestate had given these notes to the plaintiff. They are admissible against the defendants for the reason that they are privies in representation to George Bentley. (1 *Greenl. Ev.* § 189, *p.* 246.) The evidence of the declarations of George Bentley, of his intentions to give these notes to the plaintiff, were properly admitted upon the trial, for the reason that the defendants stand in such privity of representation. They were admissible against those claiming in privity of representation of George Bentley, for two reasons. In the first place they were admissible to aid in giving construction to the language employed by the donor in the alleged gift. There is ambiguity in the language employed by the donor, "take and do what you are a mind to with them." It is claimed, on the part of the defendants, that this language does not furnish evidence of an intent to donate these notes to the plaintiff. That when we consider the fact that George Bentley was a man 83 years of age, living in the family of the plaintiff, with none of his relatives surrounding him, and he lying upon his death bed, advised by his physicians that he could not long survive, and expecting himself soon to die, and knowing that when he departed, these notes would necessarily, for the time being at least, come into the possession of the plaintiff, we are to construe this act of delivery, accompanied by the direction to take them and do what he had a mind to with them, only as evidencing an intent on the part of Bentley to make the plaintiff a bailee of these notes, to hold for him while he lived, and for the benefit of those who would in law be entitled to succeed to his estate, upon his death. It is claimed, on the other hand, that the act of delivering the notes to the plaintiff, accompanied by the direction to take them and do what he had a mind to with them, furnishes clear evidence of an intent to donate them to the plaintiff. And especially must this be so, when we consider that Smith spoke of a certain mortgage which

was with the papers, and said to Bentley, " this mortgage will be of no use unless it is assigned over," and that Bentley replied, " let that go." The plaintiff claims that this evidence shows that the parties understood that the mortgage would not pass to Smith without an assignment, and that it shows further, that the parties really understood that these notes were being actually transferred to Smith.

These opposite constructions placed upon the language employed by Mr. Bentley at the time he delivered over those notes to Smith, show most conclusively that there is such ambiguity in the language employed and relied upon to sustain this *donatio causa mortis* as justifies the admission of parol evidence to aid in its interpretation. (19 *Barb.* 631.  16 *Mass. Rep.* 108.  22 *Wend.* 148.  16 *Ves.* 481.)

These declarations of George Bentley, as proved by the various witnesses upon the trial, expressing his intention to give them to the plaintiff, are admissible as primary evidence in the case, to establish the donation itself.  When upon his death bed, and soon anticipating death, he passes over these notes to Smith, in presence of Enos, for whom he had sent.  This evidence of the repeated declarations of George Bentley, that he intended to give these notes to Smith at his death, was properly received, as it reflected upon the tradition, or in other words, furnished evidence of the *quo animo* with which he delivered over the notes to Smith.  They are primary evidence to prove the gift.  (*Cowen & Hill's Notes*, 590, *note* 452.  1 *Nott & McCord*, 237.  19 *Barb.* 631.  16 *Mass. R.* 108.)  If a man were to say to various persons, for several years preceding his death, that he intended to give a certain article to A. at his death, and then upon his death bed, apprehending death, were to call A. to his bed side and deliver over the article to him, without saying any thing, I suppose it would be a question for a jury, and where they might even infer a gift from the act of tradition and the previously declared intention to give.

The fact that Smith was a stranger in blood to George Bentley, and that Bentley had relatives living, upon whom, for many years, he had been in the habit of bestowing all the income of

Smith *v.* Maine.

his property, rendered the declarations of George Bentley, that " he should pay off his relatives, all he intended to give them, in his life time ;" that " he had paid his relatives off what he intended to give them," and that " he should not give them any more of his property," pertinent evidence, as it negatives the intent to give the notes to these relatives, who are now claiming them, and as it repels the natural presumption which might otherwise be indulged, that George Bentley, who had been so kind and benevolent in his feelings to his relatives as to give them the entire income of his property for many years, would give his property to them, instead of a stranger to his blood, at his death. The evidence which was admitted upon the trial, showing the relations which had existed between George Bentley and the plaintiff, for twenty years previous to his death, and the fact that Bentley considered that the plaintiff had saved his life, by his attentive care and nursing at a former period of life ; that he and his wife had nursed him in his old age, and administered to all his wants in the infirmity of his declining years ; and that Smith had rendered valuable services for him in the oversight and transacting of his business for him, was also properly admitted, as furnishing a reasonable motive for Bentley's making a stranger to his blood the heir of so much of his property. It was at least admissible to meet the argument made upon the trial, that it should require stronger evidence to establish the plaintiff's case, because this property was given to a stranger in blood, instead of a relative. But again, this evidence was all admissible upon another principle. It was admissible to aid in giving construction to the language employed in making the alleged gift. It is declared in books of the highest authority, to be the duty of the court, in giving construction to a will by means of extrinsic evidence, to place itself in the situation of the testator, the meaning of whose language it is called upon to declare. ( *Wigram on Wills, pl.* 5, 96, 215. 1 *Greenl. Ev.* § 291, *note* 1 *and cases there referred to.*) This can only be done by proving the extrinsic facts and circumstances which show the existing relations between the parties. The rule applies with still greater force to the case of a gift,

where there is no written will to limit or exclude any extrinsic evidence material to establish the meaning of the donor's language. (2 *Russ. & M.* 689. 2 *Roper on Leg.* 1741, *Am. ed. of* 1848, 1760, 1781. 10 *Barb.* 16, 17. 2 *Roper on Leg.* 1751 *to* 1783, *and cases there referred to.*) The delivery of these notes by the plaintiff to the defendants, on their demand, under protest of the plaintiff that he would not relinquish his title to them by such act, and upon the agreement of the defendants that such delivery should not prejudice the plaintiff's claim to the notes, did not deprive the plaintiff of any right or title to the notes which he might have had, for two reasons. In the first place, the passing over of an article of personal property with the declared intent not to part with the title, by delivering possession, does not deprive the owner of the right afterwards to assert his title and reclaim his property. The principle relied upon in the case of the voluntary payment of money on a claim, under a protest that it is not due the party, has no application to a case like the present. A second and perfect answer to this objection is, that the plaintiff refused to give up possession of these notes to the defendants, unless they would agree that his parting with the possession thereof to them should not affect or prejudice any claim he might have to the notes, and the defendants having obtained the possession of them upon such agreement that it should not prejudice his claim, they are estopped in law from setting up such act of delivery as a bar to the plaintiff's claim to the notes, or insisting that by such delivery the plaintiff relinquished any claim he might have thereto. (9 *Barb.* 618. 12 *id.* 427. 5 *Metc.* 61, 65.)

There was no error committed on the trial, in admitting the conversation between Smith and his counsel Mitchell, as proved by the witness Barnes. Mr. Enos had testified that when the defendants demanded the notes of the plaintiff, he requested to have it put off one day to see his counsel, saying that he did not wish to prejudice his rights, and the defendants refused. Now the defendants, on the cross-examination of this witness, proved by him that the protest was in the handwriting of Mr. Mitchell, one of the plaintiff's counsel. This evidence was doubtless

Smith *v.* Maine.

called out by the defendants, for the purpose of raising the presumption or inference that the reason assigned by the plaintiff for desiring a delay of one day, to see his counsel, was pretense—was untrue in fact. In answer to this evidence, the plaintiff offered this testimony to show that althongh Mr. Mitchell had drawn this protest as counsel for the plaintiff, he had done so away from his office and without any examination of the matter, and that he advised the plaintiff to take further counsel before acting in the premises. The evidence furnished a legitimate answer to the evidence called out by the defendants on the cross-examination of Mr. Enos, and there was no error in admitting it. The only view in which it is claimed by the appellants that the evidence was improperly admitted, is that it was wholly immaterial to the issue in the cause, and that it was calculated to mislead the jury. Now if this evidence is wholly immaterial, it follows that the evidence called out by the defendants, to which this was but an answer, was immaterial; and if the court have allowed the plaintiff to answer an immaterial piece of evidence called out by the defendants, they cannot urge it as a ground for reversing the judgment. There is another perfect answer to this objection. If we admit that the evidence was wholly immaterial, as claimed by the appellants, and improperly admitted therefore, it does not furnish any ground for a new trial, for the reason that the evidence given could not have misled the jury. The only branch of the case it could in any manner affect, was the one of the surrender of the notes to the defendants, upon their agreement that it should not prejudice the plaintiff's claim. And upon this branch of the case the evidence is so conclusive that the defendants are estopped to set up the defense that this evidence could not have influenced the verdict. The nonsuit was properly refused. The case was one for the jury, and the verdict not against evidence. A new trial must be denied.

[BROOME GENERAL TERM, January 13, 1857. *Gray, Mason* and *Balcom,* Justices.]