WILLIAM B. BARNES

V.

THE PEOPLE OF THE STATE OF ILLINOIS, FOR USE, ETC.

Donatio Mortis Causa—*Delivery to Third Person—Sufficiency of.*

A gift, to operate as a *donatio mortis causa,* must be actually delivered to the donee, or to a third person for his benefit. Where it is delivered to a third person, the donor must part with all control over the subject of the gift. If the donor retains control over the gift, the holder is regarded as his agent, and a direction to keep it for the donee will not amount to a present delivery sufficient to create a *donatio mortis causa.*

[Opinion filed June 14, 1887.]

APPEAL from the Circuit Court of Greene County; the Hon. G. W. HERDMAN, Judge, presiding.

Messrs. WITHERS & HENSHAW, for appellant.

Where one, in apprehension of death, delivers a thing to another to be given by him to a third after the death of the donor, and on such donor's death the thing is delivered accordingly to the donee designated and accepted by him, this is a valid gift *mortis causa*. Sessions v. Mosely, 4 Cush. 87.

That the promissory note of a third person may be the subject of a *donatio causa mortis* is no longer a matter of controversy. Borneman v. Sidlinger, 15 Maine R. 429; Parish v. Stone, 14 Pick. 198; Grover v. Grover, 24 Pick. 261.

Hannah Chapman may have had the right to recall the gift, but such power to recall constitutes the distinction between gifts *inter vivos* and *causa mortis*. She did not recall the gift, and it became absolute at her death. 2 Kent's Com., 444 and 445.

The delivery of the notes in controversy to Myrtle Barnes for her father, Wm. B. Barnes, became a *donatio causa mortis*. The gift is clearly intended; it was not recalled and Hannah Chapman died of her then present illness. The gift, therefore, became complete. 3 Redfield on Wills, 347; Delmotte v. Taylor; 1 Redfield's Sur. Rep. 417.

Mr. MARK MEYERSTEIN, for appellee.

CONGER, P. J. This was a proceeding instituted in the County Court by appellee as administrator of Hannah Chapman, under Sec. 81, Chap. 3, R. S., for the recovery of the notes in question, and was afterward heard on appeal by the Circuit Court, where judgment was rendered that such notes belonged to appellee as such administrator and were not the property of appellant Barnes.

Hannah Chapman, the deceased, had resided with appellant about eleven years, was fifty years of age and unmarried, and the aunt of appellant's wife. About a year prior to her death she was afflicted with a dangerous and contagious disease

called phlegmonous erysipelas, during which appellant nursed her, and she finally recovered. During this sickness, on two occasions, she told her physician that she didn't think she would ever be able to repay appellant for all his kindness to her, but what she had she would leave to him.

During this sickness Miss Chapman gave the notes in question, one being for $1,000 and the other for $300, to appellant, and told him to keep them, which he did until the following June, when he returned them to her. Two days before she died, as appellant was about starting for Kansas, she told him to go to her trunk and get those notes out of her trunk; that it would not do for her to die with those notes in her trunk; but appellant told her they were all right there.

On Saturday, the next day after appellant had started to Kansas, Miss Chapman called a daughter of appellant, aged about twelve, and directed her to go up-stairs to her trunk and bring her a package, and when brought to her after looking at it, handed it to the girl saying: "Now, Myrtle, take this package and take care of it, and if I die before your father comes back, give it to him." She also told the girl that she "*should*" or "could" put the package in a small paper box in the trunk from which the package was taken. The package was by the young girl put in this box, and the same day, by directions of her mother, wife of appellant, but without the knowledge of Miss Chapman, Myrtle took the package out of Miss Chapman's trunk and placed it in her mother's trunk, where it remained until a few days after Miss Chapman's death, when Myrtle gave it to her father. Miss Chapman died on Sunday, the next day after giving the package to Myrtle.

The package consisted of the two notes in controversy, which were both the property of and payable to Miss Chapman.

Appellant's mother was in the room at the time of the delivery of the package to Myrtle, and her recollection of Miss Chapman's language was: "She told Myrtle to take care of it and give it to her father when he came home."

It is not at all probable that the child would interpolate the words, "if I die before your father gets back," unless they were in fact used, and we think it much more reasonable to suppose that these words were really used, but not heard or

Barnes v. The People.

possibly forgotten by Mrs. Barnes, and we shall therefore consider the words used as those stated by Myrtle.

It is insisted by appellant that these facts constitute a gift *mortis causa*, by virtue of which he is now the owner of the notes in question.

The requisites which are indispensable to constitute a valid gift, *mortis causa*, are: 1. "That it be not only made in apprehension of present peril of death, but death must ensue without any perfect remission of the apprehended peril."  3 Redfield on Wills, 324. 2. "The gift, to operate as a good *donatio mortis causa*, must have been made to take effect only in the event of the donor's death, by his existing disorder." Ibid. 325. 3. "There must be an actual delivery of the chattel to the donee, so as to transfer the possession to him, but a delivery to a third person for the benefit of the donee will be sufficient, provided the donor part with all control over the subject of the gift. But so long as the donor retains control over it, the holder is regarded as his agent, and the direction to keep it for the donee will not amount to any present delivery sufficient to create a *donatio mortis causa*." Ibid. 326 and 330; 2 Kent, 444 star paging, *et seq.*

The difficulty in this case arises upon the third proposition, *i. e.*, whether there was a sufficient delivery.

When the words used by the donor, or the acts performed which are relied upon to constitute the delivery, are ambiguous, extrinsic circumstances, such as the relation between the parties and their interest in and obligations to each other, may be shown in explanation.  Smith v. Maine, 25 Barb. 33.

The statements of Miss Chapman of her gratitude to appellant for his kindness toward her in her sickness, of her intention to give him all that she had, of actually placing the notes at one time in his possession, are all to be considered, and if her words at the time she placed the notes with Myrtle were ambiguous, would have weight in explaining her true meaning and intention.

But we think there is no ambiguity or uncertainty in the expression: "Now, Myrtle, take this package and take care of it, and if I die before your father comes back give it to him."

The delivery by Myrtle to her father was to be made only on the condition of Miss Chapman's death occurring before appellant returned to his home. Had he returned before her death, it is quite clear Myrtle would have had no authority to deliver the package to him. And it is equally clear, we think, from this language, that the donor intended to reserve to herself the control and possession of it in case appellant should return during her lifetime so that she might herself make the gift to him.

The expression is equivalent to saying, if I die before your father comes back, give it to him, if I am alive when he returns I will attend to the matter myself. If this be the true construction of the words used, it is clear that the delivery to Myrtle was not absolute but conditional; that she held it as the agent of the donor and not of appellant; that the death of the donor prior to appellant's return was a condition precedent which must have happened before Myrtle would either hold the package absolutely for her father or be authorized to deliver it to him.

The fact that a gift *mortis causa* may be revoked and recalled by the donor, does not lessen or change the necessity for such an absolute unqualified delivery as will at once pass the present title and control of the gift to the donee, and exclude the donor from all control over, or property in it. The gift must be executed, the title must vest in the donee and the dominion and control of the donor over the gift must pass to the donee.

The condition of possible revocation, which inheres in a gift *mortis causa*, is a subsequent condition which may never occur to defeat or revoke the gift, and which does not prevent a present valid title from vesting in the donee, while the condition here imposed is a condition precedent, which must happen before it becomes a gift, and as the contingency contemplated is the donor's death, the gift can not be executed in her lifetime, and consequently can never take effect. Basket v. Hassel, 17 Otto, 602; Walton v. Ford, 74 Mo. 195.

The judgment of the Circuit Court will be affirmed.

*Judgment affirmed.*