Hackney *v.* Vrooman.

[JEFFERSON GENERAL TERM, October 7, 1862. *Mullin, Morgan* and *Bacon,* Justices.]

DAVID HACKNEY, administrator &c., *vs.* BETSEY VROOMAN and others.

Where there is a contest respecting a gift, between the donee and the representatives of the donor, the declarations of the donor are admissible, being against his interest when made; and the admissions of the testator or intestate, as a universal rule, are admissible against his representatives.

Where a bond and mortgage were found, after the mortgagor's death, in a tin box of his, containing paid notes, papers of old dates, bills of goods, old outlawed notes due him, and other miscellaneous papers; and there was proof of a declared intention of the mortgagee to give the bond and mortgage to his daughter, (the wife of the mortgagor;) *Held* that in the absence of any evidence casting suspicion upon the *bona fides* of the possession of the

Hackney *v.* Vrooman.

securities by the mortgagor, at the time of his death, such possession was presumptive evidence of a gift to his wife.

*Held, also,* upon the facts, that it was not the intention of the donor, in giving the securities to his daughter; to discharge the debt; that he designed that it should be her separate property, so that she could assert an interest in the mortgaged premises, in the event of the mortgagor's death without heirs by her; and that upon her death before foreclosure, the securities became the property of the husband, and thus, the legal and equitable estates meeting in him, the latter became merged in the former.

Whether a gift of a bond and mortgage be *inter vivos,* or *causa mortis,* the donee acquires a legal as well as equitable title to the securities, by mere delivery, without writing.

THIS is an action brought by the plaintiff, the administrator, &c., of William Hackney, deceased, with the will annexed, to foreclose a mortgage given by John S. Vrooman, now deceased, to the said William Hackney in his lifetime, dated June 26, 1843, to secure the payment of "$450, with interest, in five years from the date" thereof, and which mortgage was recorded in the clerk's office of the county of Oswego, June 29, 1843. The plaintiff claimed that there was due and unpaid upon said mortgage, the whole of the principal and interest thereon, from the date of the mortgage. The defendants were heirs of the mortgagor, subsequent purchasers, incumbrancers, &c.

The answer was, 1st. A general denial; 2d. Payment by the mortgagor; an averment that the mortgagee gave the mortgage and the bond accompanying it to the mortgagor's wife, who was the daughter of the mortgagee. The defendants demanded judgment that the bond and mortgage be declared paid and satisfied, and that the same be canceled and discharged of record, and the complaint dismissed with costs.

The action was tried by the court, without a jury, at the Oswego circuit.

The plaintiff was unable to produce said mortgage, or the bond accompanying the same, upon the trial. Both

were in the possession of the defendants, and produced by them at the request of the plaintiff.

The condition of the bond and mortgage was as follows, viz : " The condition of this obligation is such, that if the above bounden, John S. Vrooman, his heirs, executors or administrators, shall and do well and faithfully pay, or cause to be paid, unto the above named David Hackney, his heirs, executors, administrators or assigns, the just and full sum of $450, with .interest thereon, in five years from the date hereof, without fraud or delay, then this obligation to be void," &c. From the fact that no interest is payable until the expiration of five years, when the principal became due, it was claimed by the defendants that the mortgage showed upon its face that it was not taken as an ordinary security for a debt.

It appeared upon the trial that William Hackney, the mortgagee, resided, in his life time, in the county of Montgomery ; that Betsey Vrooman, wife of John S. Vrooman, the mortgagor, was the daughter of said Hackney, and that she and her husband resided, at the date of the mortgage, and until they respectively died, on the mortgaged premises, in the town of Hastings, in the county of Oswego ; that said mortgage was given for money previously advanced by said Hackney, to his said daughter and her husband ; that said Hackney distinctly stated, at the time the mortgage was given, in 1843, when the mortgagor was present, that he designed said mortgage as a gift to his daughter Betsey, except in the single contingency of his needing the money, or some part of it, for his own support during his lifetime.

Hackney's will was dated September 10, 1841, and he died January 13, 1846. Mrs. Vrooman died in 1847. John S. Vrooman died December 7, 1857. Hackney's will was proved, and administration granted thereon to the plaintiff, in 1857.

Shortly after the death of John S. Vrooman, in Decem-

Hackney *v.* Vrooman.

ber 1857, Devendorf, his administrator, found the bond and mortgage in question, in the house of Vrooman, in a small tin box, which contained old and canceled notes, and other old and defunct papers, and he has retained possession of them ever since. There was no evidence that any claim had ever been made by any body upon this bond and mortgage, until this action was commenced, in 1860, which was more than seventeen years after they were given—fourteen years after the death of Hackney—and not until the mortgagor and his wife had died also.

There was no evidence to show that this bond and mortgage were in the possession of Hackney at the time of his death, or in the possession of any other person or persons than John S. Vrooman and his wife, at any time subsequent to the death of Hackney.

The court ordered judgment for the defendants, directing the bond and mortgage to be declared satisfied, and that the complaint be dismissed, with costs. The following opinion was delivered by the justice before whom the action was tried.

MORGAN, J. The letters of administration granted to the plaintiff in this action, must be regarded as sufficient to entitle him to administer upon the estate of William Hackney, until the same are revoked. (2 *R. S.* 80, § 56.)

The mortgage, with the accompanying bond, which this suit is instituted to foreclose, was produced on the trial, by the defendants' counsel, and the proof shows that it was found among the papers of John S. Vrooman, the mortgagor, after his decease, by his administrators; but there is no direct evidence to satisfy me how it came into his possession. William Hackney, the mortgagee, resided in Montgomery county, and Betsey Vrooman, the wife of John S. Vrooman, was his daughter, and they resided in Hastings, Oswego county, on the mortgaged premises. The mortgage was executed in 1843, to secure the payment

of moneys he had advanced to Vrooman at various times, to help him to pay for the lands in question. Just prior to the taking of the mortgage, John S. Vrooman had lost his only child, and it was not expected that he would have another by his wife. He expressed his intention to put the amount advanced into a mortgage so that he could hold it for his daughter's benefit, if she outlived her husband. And he declared his purpose that it should not be taken away from her, and that he calculated eventually to give it to her absolutely, but he did not know but he should have to use it himself, and all he had, before he died. William Hackney died January 13, 1846, and Betsey Vrooman, his daughter, died in January 1847, without children. John S. Vrooman committed suicide, December 7, 1857. Peter Devendorf administered on his estate. The day after the decease of John S. Vrooman, Devendorf, accompanied by Rudolph Vrooman, went to the house where John S. died, and found the bond and mortgage in a small trunk among a quantity of canceled notes and other papers. Devendorf was subsequently appointed administrator and took possession of them.

This is all the evidence which bears upon the question, and it is now claimed by the defendants that the mortgage is paid, or that it was surrendered up to John S. Vrooman by William Hackney, in his lifetime, in pursuance of his intention to forgive him the debt which it secured.

As there is no question made or evidence in the case as to any unfair practice on the part of Vrooman to obtain possession of the security, I think the presumption of law is that it was surrendered up to him with a view of forgiving the debt.

It would not be in the common course of dealing for William Hackney to deliver up the bond and mortgage to Vrooman unless it had been paid, or unless he intended to give him or his wife the moneys which he had advanced to them to help pay for the place. The circumstances

Hackney *v.* Vrooman.

leave it to be presumed that he made the gift absolute before his death. Where, in the ordinary course of dealing, a security, when paid, is given up to the party who pays it, the possession of the security, by the debtor, after the day of payment, is *prima facie* evidence that he has paid it. (2 *Greenl. Ev.* § 527.) So where a man expresses an intention to give a thing, the subsequent possession of the thing by the donee is sufficient to authorize the presumption that the gift was actually made. (*McClough* v. *Lockhart*, 1 *Bailey, S. C.* 117.) In *Weckett* v. *Raby*, (2 *Bro. P. C.* 386,) Mr. Piggott, a short time before his death, said to his wife, who was his executrix and legatee, that he had Raby's bond which he did not deliver up, as he might live to want it, but added, "when I die he shall have it; he shall not be troubled or asked about it." She afterwards put the bond in suit, but the court ordered it to be delivered up and canceled. And in *Richard* v. *Sims*, (2 *Eq. C. Abr.* 617,) the mortgagee said to the mortgagor, "take back your writings; (a bond and mortgage;) I freely forgive you the debt." The mortgagor accordingly took them. The mortgagee had also stated to the mother of the mortgagor that he intended to forgive the debt. Lord Hardwick held that the debt was extinguished. And where it is clearly inferable from the acts and conduct of the party entitled to the benefit of the deed or other instrument that he has treated it as released or otherwise dead in point of effect, a court of equity will so decree it. (2 *Story's Eq.* § 705, *a.*)

Here the bond and mortgage were evidently intended to be given up to the wife of John S. Vrooman, if she survived her husband, unless the mortgagee's own wants should require payment in his lifetime. It is impossible to determine with entire certainty what were the circumstances under which it was relinquished to Vrooman prior to his death. There is nobody to explain them, and in the absence of any evidence tending to show that John S.

---

Hackney *v.* Vrooman.

---

Vrooman became possessed of the bond and mortgage wrongfully, I think it is to be presumed that they were surrendered to him to be canceled. It was held in *Smith* v. *Smith*, (15 *N. H.* 55,) that the possession by the mortgagor of the notes secured by the mortgage, was *prima facie* evidence that they had been paid by him. In *Carroll* v. *Bowie*, (7 *Gill*, 34,) it was held that the possession, by an obligor, of a bond, (who was surety,) creates a presumption in law that it has been paid. (*See also*, 19 *Pick.* 220.) In the absence, therefore, of any evidence that William Hackney intended to forgive the debt secured by the mortgage, I think I should be compelled to presume that it was paid, without some explanation to account for its being found in the possession of the mortgagor. But with the proof as to his intended gift of the same to Mrs. Vrooman, as an advancement of his estate, I think the circumstances justify the conclusions that the old gentleman, prior to his death, forgave the debt and surrendered up the bond and mortgage in question, to be canceled. The result is, that there must be a judgment according to the prayer of the answer.

From the judgment entered in accordance with the above opinion, the plaintiff appealed.

*Marsh & Webb*, for the appellant.

I. There is no pretense, and can be none, that this was a *donatio causa mortis*. "It is essential to such gifts that the donor make them in his last illness, or in contemplation and expectation of death, and with reference to their effect after his death; and if he recovers, the gift becomes void." (2 *Kent's Com.* 444.) These essentials do not exist in this case, nor does the learned judge who decided this case put it upon this ground. (*Willard's Eq. Jur.* 553, 554.)

II. The mortgage has not been paid. 1. There is no proof that any money was paid to the mortgagee to apply

Hackney *v.* Vrooman.

on the mortgage. 2. At the time of the decease of the mortgagee, there was nothing due on the mortgage, and it is therefore improbable that anything would have been paid on it. The mortgage was given 26th of June, 1843, payable, with interest, in five years from date. The mortgagee died 13th of January, 1846, nearly two years and a half before anything became due on the mortgage. 3. The executors named in the will never qualified or acted, and therefore no payments could have been made to them; or, if made to them, such payments could easily have been proved. 4. The will of William Hackney was not admitted to probate till 7th of April, 1857, and letters of administration thereon, with the will annexed, were granted to the plaintiff on the 31st of October, 1857, and on the 7th of December of the same year, the mortgagor committed suicide. No pretense of payment to the administrator is made. 5. The learned judge who tried the cause does not put his decision on the ground of payment. 6. The presumption is, that a man will not pay a debt before it is due. (3 *Stark. Ev.* 1253.)

III. There was no donation of the bond and mortgage by the mortgagee to the mortgagor, or his wife. 1. To make a valid donation either *inter vivos,* or *causa mortis,* there must be a delivery. (2 *Kent's Com.* 438. *Allen* v. *Cowan,* 28 *Barb.* 99.) In this case many authorities are cited, showing that delivery is absolutely necessary to constitute a valid gift; though in this case the court erred as to what constituted a delivery. (*See* 23 *N. Y.* 502.) 2. "A mere intention, or naked promise to give, without some act to pass the property, is not a gift. (2 *Kent's Com.* 438.) 3. "If the thing be a chose in action, the law requires an assignment, or some equivalent instrument, and the transfer must be actually executed." (2 *Kent's Com.* 439. *Hooper* v. *Goodwin,* 1 *Swanst.* 486. *Hunter* v. *Hunter,* 19 *Barb.* 631 *to* 635.) . I believe the only exception to this rule, in gifts *inter vivos,* is the gift of negotiable paper

against a third ·person. "In this respect there is a man-
ifest distinction between a gift *inter vivos* and a *donatio
mortis causa.* In the former a court of equity will not com-
pel a donor to complete his gift, nor an executor to com-
plete the gift of his testator; whereas, as we have seen, in
the latter case, the donee may successfully invoke the aid
of the court of· chancery for that purpose." (*Harris* v.
*Clark,* 2 *Barb.* 94, 98, 99. *Story's Eq. Jur.* § 433, *note* 3,
*and* § 793, *a, and notes. Price* v. *Price,* 8 *Law and Eq.* 271.
*Van Deusen* v. *Rowley, adm'r,* 8 *N. Y.* 358, 360.) In this
case the father made an assignment to his son of twenty
shares of bank stock. No consideration passed. The
father, when he bought the stock, said that he bought it
for his son, and the stock certificate was delivered to the
son. The court say: "It was a gift not resting in agree-
ment, but completely executed. The stock was intangible;
but the evidences of the title, and all of them, were placed
in the possession of the donee," thus confirming the doc-
trine that a gift of a chose in action, *inter vivos,* must be
by assignment, or some equivalent instrument, actually
executed. No such instrument is pretended in this case.
As to the necessity of actual and immediate delivery to the
donee, or to some other person for him, *see Noble* v. *Smith,*
(2 *John.* 52;) *Grangiac* v. *Arden,* (10 *id.* 293 *to* 296;) *Cook* v.
*Husted,* (12 *id.* 188;) *Huntington* v. *Gilmore,* (14 *Barb.* 243,)
which cites very many authorities. In this last case, as in
some of the others, the person claiming as donee was in
actual possession. (*Hunter* v. *Hunter,* 19 *Barb.* 631 *to* 635.)
In the case at bar, there is no evidence that the mortgage
was ever delivered to or in possession of Mrs. Vrooman.
In the opinion of the circuit judge in this case, some
authorities are cited as sustaining a contrary doctrine, and
as establishing the principle that "where a man expresses
an intention to give a thing, the subsequent possession
of the thing by the donor, is sufficient to authorize the
presumption that the gift was actually made." It becomes,

Hackney *v.* Vrooman.

therefore, necessary to review briefly these authorities. *Weckett* v. *Raby*, (2 *Brown's Parl. Cases*, 386,) is referred to in *Story's Eq. Jur.* § 706, as a "curious case," and he says of it: "It carries the doctrine of an implied trust or equitable extinguishment of a debt, to the very verge of the law." In note 1, to said section, he says: "This case was recognized in its principle by Lord Cottenham, in *Flower* v. *Marten*, (2 *Mylne & Craig*, 459 to 475,") and refers to the case of *Tufnell* v. *Constable*, (8 *Sim.* 69,) as *contra*. And in section 706, note *a*, Story doubts and questions the authority of these cases, and says: "Be this as it may, they proceed upon the distinct ground that the transaction was one exclusively between the creditor and the debtor, and that, taking all the circumstances together, it was clearly the intention of the creditor to treat the debt as in equity forgiven and released to the debtor himself," and see the remainder of the section. In the case at bar, not only no clear intent, but no intent to donate the mortgage debt to the debtor himself, was ever expressed. At the most the evidence shows only a vague intent, on certain contingencies, (one of which, at least, viz., the daughter surviving her husband, never happened,) to give the debtor's wife the benefit of the mortgage. And therefore, according to Story, even allowing the case in 2 *Brown's P. C.* to be law, the mortgagor, and of course those claiming under him, can claim nothing under the donation. We may add, that not only is no intent to give the mortgage to the debtor shown, but the mortgagee evidently designed that neither the mortgagor nor his heirs should receive the benefit of the mortgage. *Flower* v. *Marten*, (2 *Mylne & Craig, supra*,) shows that the intent to give must be clear and distinct, and, in this case, the donation was to the debtor. *Richard* v. *Sims*, (2 *Eq. Cases Abr.* 617,) is a case where the intended donation was direct to the debtor, and therefore comes within the remarks above cited from Story. Besides, in this case, the intent was

carried into effect by actual delivery to the donee. In *McClurg* v. *Lockhart*, (1 *Bailey*, 117,) the facts are thus: The plaintiff married the defendant's daughter. About a year after the marriage, the slave, (to recover which the action was brought,) had been sent or came into the plaintiff's possession, the defendant having previously declared that she intended the slave for the plaintiff's wife. The slave remained in the plaintiff's possession till the death of his wife, and afterwards returned to the defendant, who retained possession after demand made. Here we have sufficient proof of a perfected gift, viz., the declared intent to give, and the delivery of possession. *Tufnell* v. *Constable*, (8 *Sim.* 69,) is cited by *Story* as *contra* 2 *Brown's P. C.* and 2 *Mylne & Craig*. The facts in this case are thus: Tufnell owed Robinson £500, on note, and £1200 on bond. Robinson had, by his will, bequeathed £700 to Tufnell. Afterwards, by a codicil, he revoked the bequest, and, at the same time, made an indorsement on the bond thus: "I do this day forgive Rev. W. Tufnell the sum of $£700, part of the within named sum of £1200, for which he is indebted to me. In consequence of this gift, I have revoked, by my codicil of this date, a former bequest to the amount of said sum of £700." The court held that it was not a perfected gift. There was no delivery, and no consideration. 4. Courts will not interfere in favor of volunteers. (*Story's Eq. Jur.* § 433, *and note* 3; § 793, *a, and notes;* § 987, *and note* 2; § 1040, *c.*) 5. The presumptions are not in favor of payment or forgiveness of the debt. 1st. As to the presumption of payment. It is a legal presumption "that a man will not pay a debt which is not due." (3 *Stark. Ev.* 1253.) And we have seen that the mortgagee died long before any payment of principal or interest became due. (*See also point II.*) We need not dispute the doctrine cited in the opinion of the court, from 2 *Greenleaf's Evidence*, § 527; and we would refer to 1 *Greenlaef's Evidence*, § 38, for the same doctrine.

But we differ from the judge in the construction and application of the doctrine. What securities are, when paid, ordinarily given up to the party who pays them, without any further act to show payment? We answer, negotiable securities. Such paper, we all know, is, "in the ordinary course of dealing," delivered up on payment, and no other evidence of payment is ordinarily required. We have examined nearly all the cases referred to by *Greenleaf*, under section 38, volume 1, and section 527, volume 2, and find that they are all cases of negotiable paper. A mortgage is matter of record, and remains as record evidence incumbering the title, though paid, if not discharged of record. No prudent man, and certainly no man of ordinary intelligence, will be content with having the bond and mortgage delivered up to him when he pays them. At least a receipt would be required, and rarely does any one stop short of a satisfaction piece. The latter is "the ordinary course." Simply to receive the bond and mortgage on payment, with no other evidence, would be most extraordinary. 2d. As to presumption of forgiveness or donation of the debt, it is unnecessary to add to what we have said, or to the authorities cited, unless it be to say, "a gift is not to be presumed." (*Cowen & Hill's Notes*, *p.* 296, *note* 298.) But the learned judge thinks he "should be compelled to presume that it (the mortgage) was paid, without some explanation to account for its being found in the possession of the mortgagee." We believe a sufficient explanation has already been given. But, if more is necessary, the facts of the case furnish it. The mortgage was given 26th of June, 1843, and was payable June 26, 1848. The mortgagee died January 13, 1846. Letters of administration, with the will annexed, were granted October 31, 1857. Till then there was no one legally authorized, or who had the exclusive right, to take possession of the property and effects of the deceased mortgagee. He left several children, as appears by his will. Some of

them ought to take care of the property left by the deceased. · One had as good right as another; and the taking possession and care of the property by any one of them, or by a son-in-law of the deceased, would involve no wrong, nor make the party guilty of any " unfair practice." · Add to this that there is no pretense that Vrooman or his wife, during their lives, ever claimed that the mortgage debt was forgiven, and it seems to us that sufficient explanation is given, if, indeed, any is required.

IV. The court has found that the bond and mortgage " were surrendered to him (John S. Vrooman) to be canceled." Such finding is not within the issues to be tried; for the answer does not claim that the mortgage debt was ever forgiven him. It only claims that the bond and mortgage were given to his wife. And we have shown that, if there were any such gift, it was a nullity.

V. The court erred in receiving what Hackney said about the bond and mortgage. (1 *Kern.* 157, 164, 165.) The declarations of an ancestor, devisor, &c., are not admissible against the heir, &c., except when such declarations " are against the interest of the party making them, and might, when made, have been used against him." And see the more general doctrine. (7 *Wend.* 256. 8 *id.* 490. 1 *Hill* 612. 6 *id.* 405. 7 *id.* 361. 1 *Comst.* 519.)

*A. H. Bailey*, for the respondent.

I. From the facts of the case, the conclusion is irresistable, that William Hackney, in his lifetime, did surrender and give up said bond and mortgage to his daughter Betsey, in accordance with his intention expressed at the time it was taken. That he gave it to her as a free gift, or released and discharged it; and that it remained in her possession and in that of her husband, from that time until their decease—freed from all claim or right of property or possession, on the part of the representatives of

said Hackney, or if any property remained in it, it belonged to Betsey Vrooman and her representatives.

II. To constitute a valid gift of the mortgage, whether absolute or as a *donatio causa mortis*, it is only necessary to prove the intention of the donor to give, and that it was delivered to the donee for that purpose ; and it is not necessary to prove the actual delivery or act of delivery, but anything from which a delivery would be implied in the case of a purchase, will be sufficient in the case of a gift. It is enough that there be an actual change of possession ; and it is not necessary to prove it by any one who saw the actual delivery. In *Grangiac* v. *Arden*, (10 *John.* 293,) which was a case of gift *inter vivos*, where a father bought a lottery ticket which he declared he gave to his daughter E., and wrote her name upon it, and after the ticket had drawn a prize, he declared he had given the ticket to E., and that the prize money was hers; this was held sufficient for a jury to infer all the formal requisites to a valid gift, and that the title in money was complete and vested in her.   And yet in that case the donor retained the manual possession of the ticket, and also of the prize money after it was received ; but the inference was that he held them for her.   In *Milford* v. *Bellingham*, (16 *Mass.* 108,) in which the place of settlement of one *Bess*, an alleged slave, was concerned; the question of fact was, whether C., the grandfather, had made a gift of Bess to his granddaughter, and it was proved by the defendants that he requested her to be brought up so as to be useful to his granddaughter when married, (to whom he intended to give Bess,) and also that F., who married the granddaughter, came and took Bess, saying that she had been given to his wife by her grandfather.   The testimony was held admissible as part of the *res gestæ*, and the court said, the change of possession is established, and that the declarations of the parties went to show the intent with which the change was made.   And yet it will be borne in mind that

in that case there was no proof of a direction from the donor to the husband of his granddaughter to take Bess, and it is also clear that he did not make a delivery of her personally. The question in all such cases is, has the donor voluntarily parted with his dominion over the property, or not? (*McDonald* v. *Murdock*, 1 *Nott & McCord*, 237.) " A declaration of the alleged donor of an intention to give, and subsequent possession by the donee of the thing intended to be given, are sufficient to authorize the presumption that the gift was actually made." (*McClurg* v. *Lockhart*, 1 *Bailey S. C.* 117.)

III. The evidence is also sufficient to support the legal inference that John S. Vrooman paid the mortgage debt, and that it was extinguished. " In the ordinary course of dealing the security is given up to the party who pays it, and therefore such possession raises the presumption of payment." (*Best on Presumptions*, 188, 189. *Bainbridge* v. *Osborn*, 1 *Stark. N. P.* 300. 2 *Eng. Com. Law*, 433.)

IV. All the facts of the case are inconsistent with the idea that the mortgage belonged to the estate of William Hackney. The representatives of that estate, from the time of the death of said Hackney (January 13, 1846,) until the commencement of this action in 1860—a period of fourteen years and over—never claimed it. They have waited until Vrooman and his wife are dead. Have allowed the mortgaged premises to be partitioned, and twice sold and conveyed, before making this preposterous demand.

V. When the case closed, the presumptions were all in favor of the defense. The plaintiff made no effort to rebut these presumptions. He threw no suspicions upon the possession of the bond and mortgage by the defendants, and by John S. Vrooman and his wife, during their lives. He gave no reason for the great delay in starting this claim. He explained not one thing of the many that so badly

Hackney *v.* Vrooman.

needed explanation. He bases his right to judgment upon the single fact that this mortgage stands uncanceled upon the record. If the mortgage had never been recorded, and the fact of its existence in our possession should be shown, it would hardly be contended that the plaintiff could claim under it.

As to the declarations of the testator received in evidence. "The declarations of the ancestor, that he held the land as the tenant of a third person, are admissible to show the seisin of that person, in an action brought by him against the heir for the lands. And the declarations of an intestate are admissible against his administrator, or any other claiming in his right. (1 *Greenl. on Evidence*, § 189.)

*By the Court,* MULLIN, J. The testator, in his lifetime, loaned John S. Vrooman, on the 26th of June, 1843, the sum of $450, payable at the expiration of five years, with interest. To secure the payment of this money, John S. Vrooman made and delivered to the testator, his bond dated the day and year above mentioned, in the penal sum of $900, payable as aforesaid. Said Vrooman and wife also executed and delivered to the testator, a mortgage on the premises described in the complaint, and the same was duly acknowledged and recorded June 29th, 1843, in the clerk's office of Oswego county, where said premises were situated. The wife of the mortgagor was a daughter of the testator. When the loan was made and the papers executed, the testator resided at Minden, in Montgomery county, Vrooman and wife at Hastings, Oswego county. The testator was on a visit to his daughter, at Hastings, when the papers were executed. At some time after the date, he returned to Minden, where he died June 13, 1846. The will was admitted to probate in April 1857. By his last will the testator, after providing for the payment of his debts, bequeathed all his personal estate to his four

sons, subject to certain rights of his wife.   The plaintiff is one of the heirs and next of kin of the testator.   The defendant was permitted to prove, on the trial, in opposition to the plaintiff's objection, what was said by the testator as to what the bond and mortgage were given for, and that he intended that the mortgagor's wife should have it if he should not need it himself.   In other words, he was permitted to show that it was the testator's intention, at some time in the future, to make a gift of the securities to his daughter, Mrs. Vrooman.   And as the case turns on the evidence given under this objection, the question of its admissibility must be settled in the first instance.

In almost all the cases in which gifts have been the subject of litigation, the declarations of the donor have been received in evidence, without objection, or any question that they were not competent.   If the donor were living, and suing for the property, it is quite clear that his declarations in reference to a gift to the donee, would be admissible on the most elementary principles of the law of evidence.   When the contest, as to the gift, is between the donee and the representatives of the donor, the declarations of the donor are undoubtedly admissible, being against his interest when made ; and the admissions of the testator or intestate, as a universal rule, are admissible against the representatives.   (1 *Cowen & Hill's Notes*, 646, 656.   *Paige* v. *Cagwin*, 7 *Hill*, 361.   1 *Greenl. Ev.*, § 189.) The evidence was competent.

The scrivener who drew the bond and mortgage testified that at the time the bond and mortgage were executed, the testator said that he had let Vrooman have money to pay for some land, the title of which was in Vrooman, but as he (Vrooman) had lost his only child, if his (Vrooman's) wife outlived him, the property would go to Vrooman's family, and she would have no interest in it, and by the mortgage then taken he (the testator) could hold it, so it could not be taken from her.   He calculated eventually to

Hackney *v.* Vrooman.

give it to Mrs. Vrooman, but he did not know but he might eventually want to use it himself. Mrs. Vrooman died in January 1847, and her husband in December 1857. The bond and mortgage were found after Vrooman's death, in a tin box containing paid notes, papers of old date, bills of goods, some old outlawed notes due him, and other miscellaneous papers. I agree with the plaintiff's counsel that there is no evidence of a *donatio causa mortis*, as there is no evidence that the testator then contemplated an early death, or was not at the time in perfect health. It is also true that the bond and mortgage were not given at the time of the conversation above alluded to. On the contrary, a gift in the future was alone contemplated. If, then, the plaintiff is not entitled to recover in this case, it must be either because a gift of the bond and mortgage was made during the life of the testator, or that he forgave the mortgagor the debt. The manner in which the result was attained was not very important. The question is, whether such result has been reached, in any mode. The gift, if there was one, must have been made during the lifetime of the donor. As he died in January 1846, it was made, if at all, during the lifetime of himself and daughter, the intended donee. There is no evidence in the case that either Vrooman or his wife were at the testator's house after the mortgage was given. We cannot presume that they obtained it by unfair means, either before or after his death. Being found in the custody of the husband of the intended donee, we must presume that it was obtained fairly, and it could only be fairly obtained from the testator in his lifetime by way of gift or deposit. We have evidence of a declared intention to give, with possession by the donee, and an absence of all evidence to cast suspicion on it. Had it been shown that either Vrooman or his wife had an opportunity of getting possession of the papers without the consent of the lawful owner, we ought not, on the proof before us, to sustain this judgment.

Hackney *v.* Vrooman.

(*Kenney* v. *Public Adm'r of New York*, 2 *Bradf.* 319.) But without any such proof, or even evidence casting suspicion on the *bona fides* of the possession, we must hold the possession presumptive evidence of a gift. As we do not find the testator, his daughter and her husband, together at any time, except at the time of his visit when the papers were executed, it is quite probable that the gift was made at that time. That was some two and a half years before his death. Had the papers been left at that time on deposit they would have probably been recalled before his death; or had they, at that time, been surreptitiously or unfairly obtained, the testator would have mentioned their loss to some person, so that the heirs and legatees would have had some intimation that the papers were out of the testator's possession without his consent. It is urged by the plaintiff's counsel, that the papers not being found in the custody of the donee, the foundation of the presumption of a gift is destroyed, If these papers had been found in the possession of any third person, without claim of title to them, and there was nothing in the case but evidence of an intention to give to the daughter, it seems to me it would not be a violent presumption to hold that they had been thus left for the daughter, and the delivery thus made would have perfected the gift. (*Smith* v. *Wiggins*, 3 *Stewart*, 221.) The papers are found exactly where they naturally and properly would be if they had been given to Mrs. Vrooman in her lifetime. The husband was entitled, on her death, to her personal estate, and to administer on it for his own benefit. He was the legal custodian of all the personal property belonging to the wife at her death.

It was further argued by the plaintiff's counsel, as I understand him, that the gift, being of a bond and mortgage, was incomplete, there being upon them no assignment to Mrs. Vrooman, and that equity could not aid the donee in perfecting it by compelling the donor, or his

Hackney *v.* Vrooman.

legal representatives, to assign, or do any other act essential to the completion of the gift. It was never doubted but that a bond was the subject of a gift, either *inter vivos* or *causa mortis.* But it was held, at one time, that nothing passed to the donee by a gift of a mortgage. (*Bryson* v. *Brownrigg,* 9 *Vesey, Jr.,* 1.) In *Grover* v. *Grover,* (24 *Pick.* 261,) the contrary was distinctly held. Wilde, J., says : " It is objected that no valid gift of a chose in action can be made *inter vivos* without writing ; and this objection would be well maintained if a legal transfer of a chose in action were essential to give effect to a gift. But as a good and effectual equitable assignment of a chose in action may be made by parol, and as courts of law take notice of and give effect to such assignments, there seems to be no good foundation for this objection." And in a subsequent part of his opinion, speaking of the validity of a gift of a mortgage by parol, he refers to *Duffield* v. *Elms,* (1 *Sim. & Stu.* 243,) in which it was decided that a mortgage was not the subject of a gift *causa mortis.* But the house of lords, (1 *Bligh's New Rep.* 497,) reversed the judgment. So that in England a mortgage is the subject of gift. The Supreme Court of Massachusetts, in the case cited, refused to express an opinion on the subject.

In 1*st Story's Equity,* (§ 607, *a,*) it is said : " The doctrine now established is, that not only negotiable notes and bills of exchange, payable to bearer or indorsed in blank, but exchequer notes and bank notes, may be the subjects of *donatio mortis causa,* because they may, and do, in the ordinary course of business, pass by delivery ; but that bonds and mortgages may also be the subject of a *donatio causa mortis,* and pass by a delivery of the deeds and instruments by which they are created. * * * Mortgage deeds, when delivered, are treated but as securities for debts, and would, in the hands of the donee, be governed by the same rules. The delivery, in the case of a mortgage, is therefore treated, not as a complete act passing

the property, but as creating a trust by operation of law in favor of the donee, which a court of equity will enforce in the same manner as it would the right of a donee to a bond." At section 607, (*b*) he says : " The same doctrine is applicable to the case of a *donatio causa mortis* of a bond and mortgage, by the mortgagee to the mortgagor, consummated by the delivery of the bond and mortgage to him. In such a case, it will operate as a release or discharge of the debt if the donor should die of his existing illness. For, (it has been said,) if it was a gift *inter vivos,* the mortgagee could not get back the deeds from the mortgagor, but by operation of law a trust would be created in the mortgagee, to make good a gift of the debt to the mortgagor, to whom he had delivered the deeds. But however this may be, it seems clear that in the case of such a *donatio causa mortis,* the representatives of the donor would never be permitted to enforce the mortgage or bond against the donee."

It seems to me that whether the gift be *inter vivos* or *causa mortis,* the donee acquires a legal as well as equitable title to the bond and mortgage which are the subject of the gift, by mere delivery without writing. It was not the intention of the donor in giving the securities to his daughter, to discharge the debt. He designed that it should be her separate property, so that she could assert an interest in the premises covered by the mortgage, in the event of Vrooman's death without heirs by her. On her death before foreclosure, the securities became the property of the husband, and thus the legal and equitable estates meeting in him, the latter became merged in the former.

On this ground, alone, without going over those elaborately examined by Justice Morgan, I am of the opinion that the judgment of the special term ought to be affirmed.

Judgment affirmed.

[Jefferson General Term, October 7, 1862. *Mullin, Morgan* and *Bacon,* Justices.]