In the Matter of the Final Judicial Settlement of the Account of CATHARINE A. SWADE, as Administratrix, etc., of SARAH M. SWADE, Deceased.

ANNIS SWADE, Appellant; CATHARINE A. SWADE, as Administratrix, etc., of SARAH M. SWADE, Deceased, and Others, Respondents.

*Gift* causa mortis — *declarations of an intent to give, and as to what was given — when incompetent testimony of the donee does not require a reversal — proof of delivery.*

Upon the judicial settlement of the accounts of an administratrix, in which proceeding a niece of the intestate attacked an alleged gift made by the intestate to the administratrix, it appeared that the intestate and the administratrix were unmarried sisters and had lived together for twenty-five years; that the intestate became ill on October 3, 1897, and on the eighth day of that month, in the presence of her niece, a nephew and a grandnephew, she asked the administratrix to bring her a package of papers from a desk, which stood near her bed in the common bedroom of the two sisters and was used by both of them as a repository for their valuable papers; that the administratrix thereupon brought a packet wrapped in slate colored muslin, which contained papers and envelopes, to the intestate, who said, "These are all my valuable papers, bonds, mortgages, notes and bank book, and I give them to you to do with as you see fit, both real and personal, indoors and out;" that the intestate then gave the packet back to the administratrix, who took it, put it in the desk, locked the desk and kept the key. The intestate died October 11, 1897, and did not leave any creditors.

A nephew and a niece of the intestate testified to declarations made by the latter to the effect that she wished the donee to have all her property if she survived her.

It appeared that the intestate, when making the alleged gift, did not exhibit the contents of the packet. One of the witnesses swore that the wrapping covered the entire packet except that each end showed; that she could not see what papers were in the packet, but that as nearly as she could see they were valuable papers. Another witness testified that he saw what appeared from its color to be a bank book, and another that the packet appeared to contain papers and envelopes. They all testified to the resemblance between the packet produced at the trial and that which passed from the hands of the intestate into the hands of the administratrix.

*Held,* that the evidence established the making of a valid gift *causa mortis;*

That the proof of the intestate's declaration of her intent to give her property to the donee was competent;

That evidence of the intestate's declaration as to the contents of the packet was competent as part of the *res gestæ;*

That, assuming that it was improper to permit the administratrix to testify that the packet which she took from the desk after the intestate's death was the same as that which she produced upon the trial, the Appellate Division would not reverse the finding that the gift was valid as there was sufficient evidence in the case independent of the questionable testimony to sustain such finding; That there was sufficient proof of delivery.

APPEAL by Annis Swade, one of the next of kin of Sarah M. Swade, deceased, from a decree of the Surrogate's Court of the county of Dutchess, entered in said Surrogate's Court on the 21st day of November, 1900, finally and judicially settling the accounts of Catharine A. Swade, as administratrix, etc., of Sarah M. Swade, deceased.

*Frank B. Lown,* for the appellant.

*Milton A. Fowler* and *John Hackett,* for the respondents.

JENKS, J.:

Sarah M. Swade, the alleged donor, was a spinster between sixty and seventy years of age. For twenty-five years she and her unmarried sister Catharine, the alleged donee, had lived alone on a farm owned in common by them and their sole surviving sister, who was married. Sarah Swade died intestate, leaving surviving her the said two sisters, nephews and several nieces, one of whom alone attacks the alleged gift. It does not appear that she left any creditors. I state these circumstances as they may be considered in determining " the intent to give and the fact as to delivery." (*Cooper* v. *Burr,* 45 Barb. 9 ; *Porter* v. *Gardner,* 60 Hun, 571.) In *Fowler* v. *Lockwood* (3 Redf. 465) it was said that when the rights of creditors are not involved the testimony to establish the gift need not be as strong. Sarah Swade fell ill on October 3, 1897. On the eighth day of that month, in the presence of the niece, a nephew and a grandnephew, she asked her sister Catharine to fetch a package of papers from a desk near her bed in their common bedroom. Catharine thereupon brought a packet wrapped in slate-colored muslin, which contained papers and envelopes, to Sarah. Sarah said : " These are all my valuable papers, bonds, mortgages, notes and bank book, and I give them to you to do with as you see fit, both real and personal, indoors and out." Sarah then gave the packet back to Catharine,

who took it, put it in the desk, locked the desk and kept its key. Sarah died October 11, 1897. The presumption is that if there was any gift it was one *causa mortis*. The rule in Pomeroy's Equity Jurisprudence (§ 1146), "If a gift is actually made by the donor during his last sickness, or under any other circumstances which would naturally impress him with an expectation of speedy death, it will be presumed to be a donation *causa mortis*, although the donor does not, in express terms, declare it to be such," is approved by FOLLETT, J., in *Bliss* v. *Fosdick* (86 Hun, 162, 173), which case was affirmed on the opinion below in 151 New York, 625. This presumption is fortified by the testimony of John Delamater, a nephew, that on October 3, 1897, Sarah told him that she did not feel well, and that she did not think she would live a great while, and that she wanted Aunt Catharine to have everything outdoors and in the house. A gift, however, is not presumed. (*Matter of Bolin*, 136 N. Y. 177, 180; *Devlin* v. *Greenwich Savings Bank*, 125 id. 756.) The question first presented is whether the donee has established the gift by evidence "clear and convincing, strong, and satisfactory" — by evidence which is "very plain and satisfactory." (*Devlin* v. *Greenwich Savings Bank, supra; Ridden* v. *Thrall*, 125 N. Y. 572, 576; *Scoville* v. *Post*, 3 Edw. Ch. 204; *Grymes* v. *Hone*, 49 N. Y. 17.) In addition to the facts of the transaction itself, there is the evidence of Mrs. Montfort, the intestate's niece, who had lived with the sisters for ten years, that she had heard Sarah declare that she wanted Catharine to have everything, and that she intended to give Catharine everything if Catharine survived her, and the testimony of the nephew, Mr. Delamater, that on October 3, 1897, Sarah said that she did not expect to live long, and that she wanted Catharine to have everything out of doors and in the house. This evidence was competent. (*Hackney* v. *Vrooman*, 62 Barb. 650, 666, and authorities cited; Thorn. Gifts, § 222.) But it is contended that there was no sufficient delivery in law. The testimony is that Sarah took the packet, handed it to her sister with a declaration of the contents, saying, "I give them to you to do with as you see fit, both real and personal, indoors and out," without any further direction at all. Thereupon Catharine put the packet back in the desk, locked it and retained its key. (See *Cooper* v. *Burr, supra; Allerton* v. *Lang*,

10 Bosw. 362; *Westerlo* v. *De Witt*, 36 N. Y. 340.) There is nothing which prevents the conclusion that Catharine disposed of the packet exactly as she would have done with her own choses in action. The transaction took place in their common house. The desk had been in their common bedroom for years, and had been used by both sisters for their valuable papers. Sarah thus parted with the control of the package and of its contents, and the subsequent disposition made of the papers by Catharine was her own voluntary act; she returned them to the common repository of her sister and herself, and retained the key thereof. In *Beaver* v. *Beaver* (117 N. Y. 421, 428) the court say : " The delivery may be symbolical or actual, that is, by actually transferring the manual custody of the chattel to the donee, or giving to him the symbol which represents possession. In case of bonds, notes or choses in action, the delivery of the instrument which represents the debt is a gift of the debt, if that is the intention; and so, also, where the debt is that of the donee it may be given, as has been held, by the delivery of a receipt acknowledging payment. ( *Westerlo* v. *De Witt*, 36 N. Y. 340; *Gray* v. *Barton*, 55 id. 72; 2 Schouler on Pers. Prop. § 66 *et seq.*) " And there may be implication of an acceptance when the gift is beneficial to the donee. (Id.; *Porter* v. *Gardner, supra.*)

So far as the subjects of the gifts are concerned, it has been held that a gift of a promissory note of a third person may be made *donatio causa mortis* (*Coutant* v. *Schuyler*, 1 Paige, 316 ; *Harris* v. *Clark*, 2 Barb. 94; affd., 3 N. Y. 93; *Champney* v. *Blanchard*, 39 id. 111), and the same is true as to non-negotiable choses in action (*Cornell* v. *Cornell*, 12 Hun, 312, and authorities cited; *Bedell* v. *Carll*, 33 N. Y. 581), and as to savings bank books. (*Podmore* v. *South Brooklyn Savings Inst.*, 48 App. Div. 218; *Ridden* v. *Thrall, supra.*)

It is further contended that delivery of the particular securities was not proven. This contention is based entirely upon the fact that Sarah did not exhibit the contents of the package. The witness Mrs. Montfort says that the packet was in slate-colored muslin, and that the wrapping covered the entire package, except that each end showed; that she could not see what papers were in the package, but as near as she could see they were valuable papers. In

this she was corroborated by the other witnesses, one of whom says that he saw what appeared from its color to be a bank book, and another says that it appeared to contain papers and envelopes. These witnesses all testified to the resemblance to the packet produced at the trial, with that which passed from the hands of Sarah into the hands of Catharine. If the witnesses had testified that the donor scheduled the various choses in action or exhibited them at the time, then the appellant's case would have depended entirely upon breaking down the testimony of these witnesses. I think that their testimony is all the more creditable in that they did not attempt to manufacture testimony so as to shut off even this criticism. For it is not inherently improbable that a donor would have done exactly what the witnesses have said she did not do. But there is testimony that Sarah said at the time that the packet contained all of her valuable papers, bonds, mortgages, notes and bank book, and, if this be true, it is hardly credible that she would, upon her death bed, have made such a declaration by way of grim jest, or to delude and to deceive her life-long companion, her younger sister, and the relatives who sat around her. This, at least, is evidence *prima facie* that the packet did contain what she then declared were its contents, and nothing to the contrary appears in this record. Such testimony is entirely competent as part of the *res gestæ*. (*Kelly* v. *Campbell,* 2 Abb. Ct. App. Dec. 492; *Smith* v. *Maine,* 25 Barb. 33; Thorn. Gifts, § 223, and authorities cited; *Hackney* v. *Vrooman, supra; Porter* v. *Gardner, supra.*)

One question of evidence remains to be discussed. The alleged donee and administratrix was called as a witness and produced a package. She was then asked: "Is this the package which was in the desk and which you took from the desk? Objected to on the ground that it is immaterial and improper; that it is excluded by the provisions of section 829 of the Code. Objection overruled; exception." It is quite evident that the question did not refer to the act of the witness during the life of the intestate, for the reason that the testimony immediately preceding was: "After her death I did not take from the desk a package of papers right away; when I had occasion to use the papers I had to take some of the papers out. I have the package now." And indeed, this is clear from the terms of the subsequent motion to strike out. The further

question was asked : " Does it now contain the same as it did at that time ? "   To this a similar objection and a similar ruling were made under exception.   At the close of the evidence the learned counsel for the appellant moved to strike out the testimony of the witness with reference to the fact that after the death of her sister she took from her desk a package of papers and what it contained, and also her testimony that she has that packet of papers now, upon the ground that this testimony is immaterial and improper, and is also improper to be received under section 829 of the Code, which motion was denied under exception.   It is not contended that the question related to a personal transaction with the intestate, but the argument is that the donee did not testify to an independent fact, but to one which, in the language of ANDREWS, J., in *Clift* v. *Moses* (112 N. Y. 426, 437), "is disclosed by other evidence, * * * had its origin in and directly resulted from a personal transaction," *i. e.*, that the placing of the package in the desk was the result of a personal transaction with the decedent, and the fact of its being taken therefrom, if of any materiality at all, is due to such transaction. It is at least a serious question whether such testimony was admissible in view of the bar of section 829 of the Code, as interpreted by the court in *Clift* v. *Moses* (*supra*).   But even if it were inadmissible, the error is not sufficient to overturn the decision in this case for I think that the gift is established quite aside from this testimony, which was not admitted before a jury, but was presented to a court. Moreover, this court in this case is vested with the same power over questions of fact that the surrogate holds, and upon such questions it is to determine for itself, upon all the facts, as on the law, whether the decision was right. (*Matter of Rogers*, 10 App. Div. 593 ; *Matter of Welling*, 51 id. 355.)   Disregarding this testimony, I am of opinion that the decision of the learned surrogate was right, and that the decree should be affirmed.

GOODRICH, P. J., BARTLETT, WOODWARD and HIRSCHBERG, JJ., concurred.

Decree of the Surrogate's Court of Dutchess county affirmed, with costs.