Matter of the Application in the Estate of Anna B. Adler, Deceased, for an Order of Discovery.

(Surrogate's Court, Bronx County, June, 1919.)

Gifts — what establishes a gift causa mortis — evidence — title — discovery — Code Civ. Pro. §§ 2675, 2676.

Where in a proceeding under sections 2675 and 2676 of the Code of Civil Procedure to discover property alleged to belong to a decedent, those who the administrator alleges are in possession of the property answer the petition and aver that the deceased gave them the property before death, the proceeding involves not only an inquiry but a trial of the issue of title by the surrogate.

Where in such a proceeding it appears that the deceased and her husband, who is the petitioner, had had an unhappy married life, that she had divorced him, had remarried him and then within a month committed suicide, and it further appears that about two months before her death she signed a paper declaring that she wished her bank books to go to her mother and brother, with whom she lived, if anything happened to her, and the testimony of disinterested witnesses shows that deceased, while ill from the poison she took and which caused her death, and while she believed that she was about to die, delivered her rings to her mother and stated that she had given the key to the dresser drawer in which her bank books and insurance policy were to her brother and that she wished him and her mother to have all her property, a valid gift *causa mortis* of the rings to her mother and of the bank deposits and insurance to her mother and brother is established.

In view of the relationship between deceased and her husband and that which existed between her and her mother and brother the making of the gifts is not unnatural or improbable.

While the paper signed by deceased two months before her death stating that she wished her bank books to go to her mother and brother was not executed so as to permit of its probate as a will and while standing alone it might have no weight, it is properly received in corroboration of the other evidence in the case as tending to show decedent's intent.

The delivery required to make a valid gift may be symbolical or constructive.

So the delivery of the key to the drawer in which deceased's bank books and insurance policy were kept with intent thereby to deliver the books and the policy to the donee by a gift *causa mortis* is a sufficient delivery thereof and the delivery of the bank books with intent to make a gift of the deposits is sufficient to transfer title to them.

The delivery of an insurance policy payable to the estate of the insured vests the title to the fund payable thereunder in the donee if such is the intention of the donor when making the delivery.

While death-bed donations not made by will must be carefully scrutinized and the evidence should be clear, convincing and satisfactory, there is no presumption against such gifts nor must they be proved beyond suspicion.

PROCEEDINGS by an administrator for the discovery of property claimed to be withheld.

William S. Evans, for petitioner.

Palitz & Garten, for respondents.

SCHULZ, S.   This proceeding was brought under sections 2675 and 2676 of the Code of Civil Procedure by the husband of the decedent as the administrator of her goods, chattels, etc., to discover property alleged to have belonged to her at the time of her death and to be in the possession of her mother and her brother, the respondents.

Separate answers were interposed by each of the respondents in which they denied some of the allegations of the petition, averred lack of information sufficient to form a belief as to others and set up separate defenses, as follows: The answer of the mother alleges a gift *inter vivos* and also a gift *causa mortis* by the

Surrogate's Court, Bronx County, June, 1919.    [Vol. 107.

decedent to herself and her son, the other respondent, of a bankbook of the Bowery Savings Bank, a bankbook of the Bank for Savings, and a policy in the Metropolitan Life Insurance Company; and a gift *causa mortis* by the decedent to her of one diamond ring, one cluster ring, and one three-stone diamond ring; the property thus set forth being all of the alleged assets of the estate referred to in the petition.  The answer of the brother contains the same allegations as that of the mother with reference to the bankbooks and insurance policy.

It appears then that the answers allege title to, and right to the possession of the property involved in the inquiry.  It follows that the issue thus raised by the answers must be heard and determined.  In other words, the proceeding involves not only an inquiry, but a trial of the issue of title.  Code Civ. Pro. § 2676; note to this section in report of Revision Committee transmitted to the legislature February 9, 1914, p. 203.

The motions made by petitioner's counsel at the conclusion of the trial after the submission of the evidence as to which decision was reserved, are denied and an exception granted in each case.  *Coutant* v. *Mason*, 221 N. Y. 49; *Hackney* v. *Vrooman*, 62 Barb. 650; *Matter of Swade*, 65 App. Div. 592.  The witness Morris Worton testifying to the occurrences on the morning of July nineteenth said the decedent asked that her husband be notified, saying that he was the only one she cared to see.  The record indicates that the answer was stricken out on motion.  If the record is correct this was error.  I accordingly permit the testimony to stand, deny the motion and allow an exception to respondents' counsel.

The petitioner and the decedent had been married about seven years at the time of her death.  From the evidence it appears that their married life was marred

by disputes and that several actions for separation had been brought by the decedent against her husband but did not proceed to trial or judgment and that their marital troubles finally culminated in an action for absolute divorce by the decedent against the petitioner in which the interlocutory decree was entered on November 14, 1917, and the final decree on or about March 20, 1918. Subsequent to the entry of the decree last referred to, and on or about the 7th day of June, 1918, the decedent remarried the petitioner, but the evidence shows that she regretted the step and that thereafter further misunderstandings and disagreements occurred between them.

After her remarriage the decedent continued to live with the respondents, but it does not appear that the petitioner made his home with her. On or about the 19th day of July, 1918, and a little over a month after her remarriage, the decedent appears to have taken poison, from the effects of which she died on July 28, 1918. The Metropolitan Life Insurance policy referred to was dated August 19, 1915, and originally was made payable to the decedent's husband, but on December 6, 1917, such policy was changed and made payable to the estate of the assured. On June 1, 1918, a short time before her remarriage, it appears that she signed a document in form as follows:

" Signed,
"ANNA ADLER.
" NEW YORK CITY, Sat., June 1, 1918.

" In case anything happens to me why my bank books made out to myself, Anna Adler should go to my mother & brother to do as they see fit & do something for my father & sister who is helpless. The Bowery Savings Bank, The Bank of Savings & The Post Office Bank in the Bronx here."

The instrument referred to is testamentary in character. It is not executed, however, with the formalities required to permit its probate as a will, and hence cannot be given effect as such. It does not establish a gift either *inter vivos* or *causa mortis* as of its date, and while standing alone it might have no weight, it seems to me to corroborate, in part at least, the other evidence in the case, tending to show the intent of the decedent. *Ridden* v. *Thrall*, 125 N. Y. 572.

A consideration of all the evidence presented upon the hearing establishes clearly that the decedent's intention was that the deposits evidenced by the bankbooks and the amount which would accrue under the insurance policy should become the property of the respondents and that the rings should become the property of her mother, one of the respondents. It must therefore be considered whether she carried out that intention in the manner contended for, that is, by gifts *inter vivos* or gifts *causa mortis*. Nothing in the record warrants the conclusion that the decedent made a gift *inter vivos* of any of the property referred to, and I find against that contention. It remains to be determined whether the evidence establishes a gift *causa mortis*.

The gift of the rings is testified to by the janitress of the house in which the decedent and her mother and brother lived. This witness appears to be disinterested, and while she did not see each ring, she testifies that the decedent mentioned rings and told her mother that they were for her, handed something to her mother in the witness' presence and spoke of it as " the rings," and that she also said she was going to die. Another witness who was a member of the theatrical profession, to which the decedent and petitioner belonged, and who knew the parties well and appears to have been on good terms with both and so

Misc.]    Surrogate's Court, Bronx County, June, 1919.

far as the evidence discloses is not interested in the event, testified that the decedent told her that she had given the rings to her mother after taking the poison and that upon inquiring as to what she had done with her bankbooks, policy, etc., she said " they are in the dresser drawer locked and I gave the key to my mother. I want my mother and George [decedent's brother] to have everything I own in case I die; " that she further said she was sure she was going to die, and in that case was leaving everything to her mother and brother, and wanted to be sure that her mother was taken care of. Another witness, not related to the decedent or shown to have any interest and who at the time of her examination was ill in a hospital, testified to a statement made by the decedent to her brother, which the witness overheard, to the effect that she had given her mother the key to her dresser, that her bankbooks and policy were there and that she wanted her mother and her brother to have them if anything should happen to her.

In view of the relationship between the decedent and her husband and that which existed between her and her mother and her brother, the making of the gifts does not appear to me to be unnatural or improbable. I have considered the testimony with reference to the occurrences alleged to have taken place upon the occasion when the petitioner and his counsel called upon the respondents and made a demand for the property claimed. The petitioner urges that neither one of the respondents made any claim of ownership at that time and that their present contention is inconsistent with the position then taken by them. To me such does not appear to be the case. The fact is conceded that the respondents did not deliver the property and from the evidence it appears that one of them said he wished to seek legal advice.

Surrogate's Court, Bronx County, June, 1919.     [Vol. 107.

In *Ridden* v. *Thrall, supra,* the court said (p. 579) :
" To consummate a gift, whether *inter vivos* or *causa mortis,* the property must be actually delivered and the donor must surrender the possession and dominion thereof to the donee. In the case of gifts *inter vivos* the moment the gift is thus consummated it becomes absolute and irrevocable. But in the case of gifts *causa mortis* more is needed. The gift must be made under the apprehension of death from some present disease or some other impending peril, and it becomes void by recovery from the disease or escape from the peril. It is also revocable at any time by the donor, and becomes void by the death of the donee in the life-time of the donor," citing numerous cases.

The evidence clearly shows that at the time of the alleged gifts on July 19, 1918, the decedent was under the apprehension of death as the result of an illness caused by poisoning from which she then suffered. The delivery referred to in the authorities is not limited to an actual, physical delivery of the property itself. It may be actual, symbolical or constructive. *Matter of Babcock,* 85 Misc. Rep. 256. Hence the delivery of the key of the drawer in which the bankbooks and insurance policy were kept, with intent thereby to deliver the same to the donee by a gift *causa mortis,* is a sufficient delivery thereof. *Cooper* v. *Burr,* 45 Barb. 9; *Pink* v. *Church,* 14 N. Y. Supp. 337; affd., 128 N. Y. 634; *Phipard* v. *Phipard,* 55 Hun, 433. The delivery of the bankbooks with intent to make a gift of the deposits was sufficient to transfer title to the deposits. *Ridden* v. *Thrall, supra; Smither* v. *Bissell,* 19 Wkly. Dig. 264; *Matter of Hall,* 16 Misc. Rep. 174; *Matter of Swade, supra.* The delivery of an insurance policy in the form of the one under consideration vested the title to the fund payable thereunder in the donee. Joyce Ins. § 2326L; Bacon Ins. § 383; *Opitz* v.

*Karel,* 95 N. W. Repr. 948; *Matter of Babcock & Dunn,* 12 N. Y. St. Repr. 841; *Travellers' Insurance Co.* v. *Grant,* 33 Atl. Repr. 1060; *Hurlbut* v. *Hurlbut,* 49 Hun, 189.

I am mindful of the fact that in cases of this character where donations are not made through testamentary writings executed with statutory formalities the evidence must be scrutinized carefully and should be clear, convincing and satisfactory. *Matter of Manhardt,* 17 App. Div. 1; *Matter of O'Connell,* 33 id. 483; *Matter of Schroeder, No. 1,* 113 id. 204; *Matter of Van Alstyne,* 207 N. Y. 298. But there is no presumption of law against such a gift nor must it be proved beyond suspicion. *Lewis* v. *Merritt,* 113 N. Y. 386. In this matter I have submitted the evidence to the test prescribed and have reached the conclusion that the respondents have established valid gifts *causa mortis* as alleged by them.

I therefore determine that the title to the bankbook of the Bowery Savings Bank, No. 1179304; the bankbook of the Bank of Savings, No. 1058684, and the deposits evidenced thereby as also the insurance policy issued by the Metropolitan Life Insurance Company, No. 1169551A, and moneys payable thereunder, is in the respondents and that the title to the rings hereinbefore enumerated is in the respondent Rose Levine.

One bill of costs is to be taxed by the respondents, payable out of the estate.

Decreed accordingly.